THE PROVIDENCE AND STONINGTON STEAMSHIP COMPANY, Appellant, *v.* THE PHŒNIX INSURANCE COMPANY et al., Respondents.

Each of the defendants issued to plaintiff a policy of marine insurance insuring its steamship M. against "all perils of the sea and navigation usually taken by marine underwriters, loss by fire excepted." The policies were in various sums amounting in all to $75,000, which for the purposes of the insurance was declared to be the value of the vessel. She went ashore in a violent storm, and as the efforts of the officers and crew were ineffectual to get her off, she was in danger of becoming a total wreck. Plaintiff thereupon, the insurers having consented that it should use every effort to save her, employed a wrecking company by whose aid she was set afloat and taken to New York, where she was repaired. The repairs, which amounted to $46,000, were paid for by the insurers. Plaintiff paid the bill of the wrecking company and other expenses incurred in getting the vessel afloat, amounting to $21,840. In an action to recover the amount so paid, *held*, that the necessary expenditures so incurred were covered by the policies equally with those incurred for repairs.

*It seems* that defendants would have been so liable had they not given their assent.

A general average was made in which the value of the steamer was stated at $275,000. It was claimed by defendants that if liable at all, they were only liable for such proportion of the $21,840 as the agreed value of the steamer, $75,000, bears to its value stated as aforesaid for general average. *Held* untenable ; that the value as agreed upon for the purposes of insurance was conclusive between the parties, and within the limit of the sum insured plaintiff was entitled to full indemnity for all losses occasioned by the perils insured against ; that therefore the items in question could not be considered the subject of general average, but should be deemed to have been incurred for the benefit of the insurer only, and as the whole amount thereof, together with the expenses for

repairs, was less than the sum insured, plaintiff was entitled to recover the whole.

*P. & S. S. S. Co.* v. *P. I. Co.* (22 Hun, 517), as to this last proposition, reversed.

(Argued June 16, 1882; decided October 10, 1882.)

These are cross appeals from a judgment, in favor of plaintiff, of the General Term of the Supreme Court, in the first judicial department, entered January 21, 1881, upon a case submitted under section 1279 of the Code of Civil Procedure. (Reported below, 22 Hun, 517.)

The material facts are stated in the opinion.

*William M. Evarts* for appellant. Each element of the cost of making the stranded vessel whole is as evident an element of the measure of direct damage by stranding by a peril of the sea, as any other. (2 Arn. Ins. 957 [marg.], and note; *Ins. Co.* v. *Fitzhugh*, 4 B. Monr. 160; *Giles* v. *Eagle Ins. Co.*, 21 Pick. 456; 2 Phil. Ins., chap. 16, §§ 1424–1433.) The cost of getting off the stranded ship, etc., enters necessarily into the right of the assured in computing for the purpose of a constructive total loss the cost of his repairs. (2 Arn. Ins. 1099–1101 [marg.]; 2 Phil. Ins., §§ 1535, 1551.) The assured may in all cases recover his direct loss without having or collecting any general average contribution, leaving it for his underwriters, after paying him, to pursue the other interests for their general average contributions. (*Maggrath* v. *Church*, 1 Caines, 196; *Griswold* v. *Un. Mut. Ins. Co.*, 3 Blatchf. 231.) The doctrine of general average, as a head of marine insurance law, does not rest upon and is not governed by any specific clauses or stipulations of the policy. (1 Arn. Ins. 34–5; 2 id. 851 [marg.]; Lowndes' Gen. Ave. 275; 2 Arnold, 876–887; 2 Phil., § 1269.) Irrespective of the stipulation in its actual form, and giving it no other effect than the mere statement of vessel value in a marine policy imports, the policy valuation must govern in a general average as well as a direct loss by peril of the sea. (*Griswold* v. *Union Ins. Co.*, 3 Blatchf. 231, 238, 240; *Forbes*

v. *The Manuf. Ins. Co.*, 1 Gray, 371, 375; *Mut. Ins. Co. v. Cargo of Ship " George,"* Olcott's N. Y. Dist. Ct. Rep. 157; *Lewis* v. *Rucker*, 2 Burr. 1167; *Tunno* v. *Edwards*, 12 East, 488; *Goldsmid* v. *Gillies*, 4 Taunt. 803; *Forbes* v. *Aspinwall*, 13 East, 323; 2 Phillips on Ins., § 1203, pp. 17–18, 19; *Shaw* v. *Felton*, 2 East, 109; Stevens' Av., Part 2, Art. 1, p. 1; *Allen* v. *Sugrue*, 8 B. & C. 564; *Irving* v. *Manning*, 1 House of Lords Cas. 287; *Young* v. *Turning*, 2 M. & G. 601; Eng. L. R., 4 Com. Pl. Div. 371.) Under the "sue, labor and travail" clause, and the express sanction by the underwriters of the expenditure made by the plaintiff in getting the vessel off the rocks, the plaintiff is entitled to recover the expenditures thus made. (*Atchison* v. *Lohre*, Eng. L. R., 4 App. Cas. 755.)

*William Allen Butler* for respondents. The contract of insurance contained in the policies was to indemnify against the risk of such perils of the sea and navigation as are usually taken by marine underwriters, loss by fire excepted, and contained no provision binding the insured to bear any part of the expenses incurred in saving the subject of insurance during, or after, the peril insured against. (1 Arnould on Ins. Maclachlan, 1872, 232; 2 id. 725; Lowndes on Average [ed. 1873], 290; *Dixon* v. *Whitworth*, L. R., 4 Com. Pl. Div. 371; *Aitchison* v. *Lohre*, L. R., 4 App. Cas. 755, 764.) The insurance companies were in no event bound to contribute toward the salvage expenses beyond the proportion of their interest in the vessel as valued in the policies ($75,000), to the value as stated in the general average adjustment ($275,000). (Lowndes' Law of Average [3d ed.], 243; 2 Pars. on Ins. 348; 3 Kent's Comm. 274; *Hotchkiss* v. *Ins. Companies*, 1 Robt. 499; 2 Phillips on Ins., § 1412; *Potter* v. *Ocean Ins. Co.*, 3 Sumn. 37; *Clarke* v. *United F. & M. Ins. Co.*, 7 Mass. 364, 377; *Griswold* v. *Union Mut. Ins. Co.*, 3 Blatchf. 231, 232.)

Danforth, J. The several defendants insured the steamer Massachusetts "against all perils of the sea and navigation

usually taken by marine underwriters (loss by fire excepted), in favor of the plaintiff in various sums, amounting to $75,000, and this, for the purposes of the insurance, was declared to be the value of the vessel. During the life of the policies she went ashore in a violent storm, and the efforts of the officers and crew to get her off being unsuccessful, the vessel was in danger of becoming a total wreck. By the aid of a " wrecking company" she was set afloat and reached New York, where she was docked for repairs. They amounted to $46,000, which was paid by the insurers, and thereafter the " wrecking company" rendered a bill for their services in saving the steamer, which was finally adjusted with the assent of the insurers at $17,500, and paid by the assured. They paid other expenses incurred to the same end, to the amount of $4,340, making the total expenditure for that purpose $21,840.

Afterward, a statement of general average was made by certain persons, in which the value of the steamer was stated at $275,000. The insurance companies deny any liability for any part of these expenses, upon the ground stated by their counsel, that " the payment of $46,000 covered the entire damage caused by the perils insured against." But if otherwise, they claim that their liability should be limited to such proportion of $21,840, as the agreed value of the steamer ($75,000) bears to its value as stated for general average.

Upon this state of facts two questions were submitted to the General Term : *First.* Are the insurance companies, having paid $46,000 to cover the cost of repairs to the steamer, bound to pay any thing more ? *Second.* If they are liable, what amount are they bound to pay ? The first question was answered in the affirmative ; and in respect to the second, the court held that the case was one for contribution upon a general average, according to the respective interests of the insured and the insurers, and that the interest of the insurer was to be limited to the sum fixed in the policies, as the value of the steamer, and the interest of the insured, to the difference between that sum and its actual value, as fixed by the adjusters ; so that the share of expenses to be charged to each should

bear the same proportion to the value of his interest as the whole sum bears to the appraised value of the ship.  Both parties appeal to this court — the insurers, because they are held bound to pay any part of the expenses; the assured, because they (the defendants) were not charged with the whole.

We concur in the conclusion reached by the learned General Term as to the first question.  It would seem plain that the assured is entitled to be indemnified against all the damage done by the perils insured against, and, notwithstanding the argument in behalf of the defendants, we find it impossible, under this rule, to separate the necessary expenses incurred in removing the steamer from the place where she stranded to the dock where she could be repaired, from the expenses of the repairs there made. · Each class of expense was equally necessary, and made so by the same peril.  If it had been possible to repair the steamer in the place where the storm placed her, and it had been done, the damage would not have been made good, or the loss satisfied, so long as she was detained upon the rock ; for she was placed there by the winds and waves, and thus the detention was from a peril of the sea, one usually taken by marine underwriters, and, therefore, by the very language of the policies before us, incurred by these defendants.  Disbursements necessarily made in order to get a ship into the sea, and then to a place where she may be fitted to keep the sea, would seem to be within the agreement of the defendants as much as the expenses incurred for repairs.  The loss incurred, and the loss insured against, included both items ; without both, the vessel could not be rendered navigable or capable of being carried on for any voyage.

The owners of a vessel damaged by perils insured against are at liberty to estimate the expense of repairing it, in order to determine whether it should be treated as a total. loss, or whether it could be repaired, and at a reasonable cost made serviceable for future navigation.  It is, therefore, well settled that for this purpose the expense of releasing her from peril, as getting her afloat from the rock, or from submergence in the sea, preparatory to repairing, may be added to the ex-

pense of the repairs. (*Sewall* v. *U. S. Ins. Co.*, 11 Pick. 90; Arnould on Insurance [Perk. ed. 1850], 1106.) This is the rule as between the assured and the underwriter, and I have found no case to the contrary.

It is clear, then, that to some extent, at least, the insurers were bound to contribute to those expenses. I do not consider it necessary to inquire whether the "sue and labor" clause now generally, if not universally, found in marine policies may be implied into the policies before us, for without that it is the privilege, if not the duty, of the insured to take every reasonable measure for the recovery and restoration of the damaged vessel. But in this case there was, as the Supreme Court held, an express assent by the insurers that the owner of the steamer should use every effort to save her.

In regard to the other question, we think the learned court below erred. By agreement of the parties, the steamer was, for the purposes of the insurance, valued at $75,000, and as the expenses necessarily incurred in taking the vessel to the dock are not less the subject of indemnity than the expenses of repair, both should be allowed to the extent of the sum insured. Within this limit these expenses could not, as between the parties to the policies, be considered the subject of general average, but should be deemed to have been incurred for the benefit of the insurers only. Any other construction would impair the effect of the contract, and reduce the liability of the underwriters below the sum bargained for and for which they received a premium, and relieve them from the operation of the general rule under which the assured may recover from the underwriter, in respect of any expenditures which he has been obliged to incur in consequence of any of the perils insured against. (2 Arnould on Ins., 844, § 8; Marshall on Insurance, p. 474, B. 1, chap. 13, § 8; chap. 17, § 2, p. 595.)

As between these parties, no inquiry is pertinent as to the actual value of the steamer, for as to them it has been fixed by agreement, and for every purpose (fraud being out of the question) it must be taken as so fixed that the insured might be indemnified to that amount, for all losses occasioned "by

perils of the sea and navigation." The value so fixed and inserted in the policy is said to be in the nature of liquidated damages. (3 Kent, 273.) It is, therefore, not open to inquiry or dispute after a loss occurs, but is conclusive between the parties in respect of all rights and obligations which arise upon the policy ; and the learned commentator above cited disapproves the doctrine of certain cases which suggest a limitation to this rule, by applying it only to a total loss, saying, " the better opinion of the text-writers is, that in settling all losses, total or partial, the valuation of the property in the policy is to be considered as correct in the adjustment of the loss, and the true measure and basis of the valuation according to the contract of indemnity."

In *North of Eng. Ins. Assn.* v. *Armstrong* (L. R., 5 Q. B. 244), the court say, in such a case, " the parties are estopped, between one another, from disputing the value of the thing insured as stated in the policy," and so applied the doctrine that the insurance company, having paid £6,000 as upon a total loss, occasioned by another ship running down the ship insured, which was, in fact, worth £9,000, but valued in the policy at £6,000, was held entitled to the full sum recovered by its owners from the vessel which caused the injury. The owners claimed to participate upon the real valuation, but the court held against them.

Now the contention of the defendant here is that, as the real value of the steamer was $275,000, the sum of $200,000 represents the interest of the owners and should share the loss caused by the recovery of the ship. The answer to it is that given in the case cited. The insurers are estopped from saying there was any value in excess of the $75,000 agreed upon, and to that extent they undertook to indemnify the owners. They now seek to divide the loss by presenting a different basis of value. If they succeed the assured will lose the indemnity for which they paid, and the consequences of a loss would be cast upon them. Such a result is required by no adjudged case, and would be against the principles both of law and equity. The sum now claimed for the expenses incurred is, we think, justly due the insured on account of damage

caused by the perils insured against, and as it is within the limits of the sum named, should be paid by the insurers, according to the terms of the engagement entered into by them.

The defendants' appeal, therefore, fails, and the plaintiff's succeeds. The judgment should be so modified as to require each defendant to pay such proportion of $21,840 as the sum insured by it bears to the total amount, $75,000, and so modified, affirmed, with costs to the plaintiff.

All concur.

Judgment accordingly.