INTERNATIONAL NAV. CO. v. SEA INS. CO., Limited.

(Circuit Court of Appeals, Second Circuit.   March 8, 1904.)

No. 113.

1. Marine Insurance—Salvage Expenses—Law Governing Apportionment.

An English valued policy on a ship contained the provision: "General average salvage, and special charges as per foreign custom, payable according to foreign statements, * * * or per rules of port of discharge, * * * at the option of assured." *Held*, that under such provision the law of New York, the port of discharge, governed as to the amount payable by the insurer on account of salvage arising from stranding, there adjusted, and the insured was entitled to recover on the policy, in accordance with the law of the port, a sum which bears the same ratio to the entire salvage he was compelled to pay as the amount of the policy bears to the policy value of the ship, although the award was made on a higher valuation, and not, as by the law of England, only such part of said sum as bears the same ratio to the whole as the policy valuation bears to the valuation on which the adjustment was made.

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here on appeal from a decree of the District Court, Eastern District of New York, in favor of the libelant, owner of the steamer St. Paul, claiming loss under a policy of marine insurance. The opinion of the District Court is found in 124 Fed. 93.

Wilhelmus Mynderse, for appellant.
Henry G. Ward, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM. The St. Paul, on a voyage from Southampton, stranded on the New Jersey coast, and salvage services were rendered to vessel and cargo, as the result of which the vessel reached New York, having sustained physical damage involving serious repairs. The salvors took legal proceedings against vessel and cargo, and an award was made separately against each. The St. Paul (D. C.) 82 Fed. 104, affirmed by this court 86 Fed. 340, 30 C. C. A. 70. The award against the vessel (exclusive of the share to be borne by the freight) was $129,914.57. A statement was made up by Johnson & Higgins, average adjusters, in which the salvage award against the steamer was claimed as a particular average, being added to the cost of repairs to the ship caused by stranding; the total amount being $248,377.28. This statement was presented to the underwriters on the St. Paul, both in this country and in England. Some of the American underwriters refused payment of the claim under the said statement. Suit was brought in the District Court, Southern District of New York, and libelant recovered. International Navigation Co. v. Atlantic Mutual Ins. Co. (D. C.) 100 Fed. 304. That decision was affirmed by this court. 108 Fed. 987, 48 C. C. A. 181.

The respondent here is a British corporation, and issued the policy of insurance in London. The vessel was valued in all her policies at £275,000, and she was insured for the whole of that amount; the respondent underwriting £4,500. The salvage award was made on the basis of actual value in her salved condition, $2,000,000 (£410,256); and her value in sound condition was $2,100,000 (£441,025). The libelant claimed to recover $45/2750$ of the $248,377.28. The insurers contend that their liability for the salvage award is restricted to $45/2750$ of $275000/441025$ thereof. The conceded amount was paid, and this suit was brought to recover the difference. The question in dispute is whether, under a valued policy, where salvage has been awarded on a higher valuation, the insured can recover ratably from the several underwriters the salvage he has had to pay, or only such part of it as is in the same proportion to the whole salvage paid as the total policy valuation is to the valuation on which salvage was awarded.

No question seems to be raised as to the amount to be paid for repairs to the vessel. It will be perceived that the question presented is a single one, and the concessions of the respective parties have greatly simplified it. The respondent's method of calculation is in accord with English law. The libelant's is in accord with American law. For brevity of statement, the one may be called "nominal proportion"; the other, "actual proportion."

The policy is a British contract, and is to be interpreted accordingly. It is, however, "competent to an underwriter on an English policy to stipulate, if he think fit, that such policy shall be construed and applied, in whole or in part, according to the law of any foreign state, as if it had been made in and by a subject of the foreign state." Greer v.

Poole, 5 Q. B. D. 272. The policy of the defendant contains the following provision:

"General average, salvage and special charges as per foreign custom, payable according to foreign statements or per York-Antwerp rules, or York-Antwerp rules of 1890, or per rules of port of discharge, if in accordance with contract of affreightment at the option of assured."

Precisely this form of words is not found in any of the cases cited upon the briefs, but it seems to us reasonably easy of interpretation. As was stated before, without some such clause, the assured on a valued policy was liable to pay in some foreign port general average charges at one rate, and when he came to his underwriter for indemnity would be paid at a different rate, receiving less than he had paid, and not securing complete indemnity. The same rule applied to claims for salvage loss as to claims for general average loss. Steamship Balmoral Company v. Marten, L. R. App. Cases (1902) 511. Naturally the assured sought to correct this by some special provision which the underwriter might be willing to assent to. A provision quite frequently adopted was, "General average according to foreign custom;" also, "General average as per foreign statement." Such provisions have been considered by British courts, and in each instance it was held that the underwriter could not dispute the adjustment as to the propriety of particular items, or as to correctness of the apportionment, and was bound by the decision of the foreign average stater, or by the custom of the foreign port, both as to fact and law on the subject of general average. Mavro v. Ocean Ins. Co., L. R. 9 C. P. 595; The Mary Thomas, Prob. Div. (1894) 123; Harris v. Scaramanga, 1 Asp. Mar. Cas. 344; De Hart v. Compania Anonima, 9 Asp. Mar. Cas. 345, affirmed 8 Commercial Cases, 314. The last citation contains the following:

"The general effect of the memorandum [to pay general average as per foreign statement, if so made up] is to make the underwriters liable as to general average for whatever the owners of the goods might be called upon to pay on that account by the foreign statement of adjustment. * * * If an adjustment has to be effected in a foreign port, it is obviously convenient that there should be a provision that in such a case the underwriter should stand in the shoes of those primarily liable upon it."

In none of the cases cited was the proposition raised, as it is here, that, although the assured might have paid general average charges on actual valuation, his claim for such loss should nevertheless be re-adjusted by scaling it down to a "nominal proportion." It would certainly seem that the manifest object of the clause would be defeated by so narrow an interpretation. "General average as per foreign custom" would be a declaration not wholly lived up to, if foreign custom made the assured pay on one basis, but the memorandum clause allowed him to collect only on another. No authority, British or other, is cited which is persuasive to so narrow an interpretation of a clause obviously intended to relieve the assured from the risk of meeting disaster without being compelled himself to meet the added risk of the geographical location of his ship when the loss was incurred and the port of safety was reached. Indeed, it would seem that the avoidance of this geographical risk was the genesis of the clause.

The phraseology of the clause in the policy now under consideration is broader than in the cases cited, for it submits to "foreign custom," whether there be an adjustment or not, "salvage and special charges." We concur entirely with the District Judge in the conclusion that under that clause the settlement of salvage losses under the policy must be in conformity to the law of the country in which the assured pays them.

The decree is affirmed, with interest and costs.