BRITISH & FOREIGN MARINE INS. CO., Limited, v.
MALDONADO & CO., Inc.

MALDONADO & CO., Inc., v. BRITISH & FOREIGN MARINE INS. CO.,
Limited.

(Circuit Court of Appeals, Ninth Circuit. November 1, 1910.)

No. 1,802.

1. SHIPPING (§ 199*)—GENERAL AVERAGE.
   Where libelant as charterer of a vessel issued bills of lading containing a clause providing that freight on the goods should be deemed earned "ship or goods lost or not lost," the freight, being payable at all events, was not at risk to the libelant as freight, but was absorbed in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the cargo to be lost or realized in the value thereof at the port of destination, and hence the freight should not be deducted from the value of the goods in determining their value at destination on which the libelant was bound to make a general average contribution.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 627; Dec. Dig. § 199.*

General average, see notes to Pacific Mail S. S. Co. v. New York, H. & R. Min. Co., 20 C. C. A. 357; The Santa Ana, 84 C. C. A. 316.]

2. WORDS AND PHRASES—"MARKET VALUE."

The "market value" of goods is the price at which the owner or producer holds them for sale; the price at which they are freely offered in the market; such prices as dealers in the goods are willing to receive and purchasers are made to pay when the goods are bought in the ordinary course of trade.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 5, pp. 4383–4388; vol. 8, p. 7717.]

3. INSURANCE (§ 477*)—MARINE POLICY—NATURE OF CONTRACT.

A marine insurance contract, insuring contributions in general average, is a contract of indemnity requiring the insurer to pay full indemnity against loss, including loss on account of general average contribution, provided the total loss of the insured is within the limit of the insured valuation.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1248, 1249; Dec. Dig. § 477.*]

4. INSURANCE (§ 477*)—MARINE INSURANCE — GENERAL AVERAGE CONTRIBUTION—EXTENT OF LIABILITY.

Respondent issued a marine policy covering a cargo of kapok having an agreed value of $48,632 against perils of sea, including general average contributions payable by the goods insured. The goods were damaged by fire at sea to the extent of $7,037.87, which the insurer paid, and on the adjustment in general average it was found that the cargo's contribution was $22,544.77, which amount libelant paid to the shipowner. In determining this amount the value of the cargo was based on its market value at destination, deducting such expenses as the owner must incur in the event of delivery and will escape in the event of total loss. The contributory value of the cargo was found to be $66,513.29. Held, that under Civ. Code Cal. § 2744, providing that a marine insurer is liable for loss falling on the insured, through a contribution in respect to the thing insured, required to be made by him towards a general average loss called for by a peril insured against, the insurer's liability was not that proportion of the amount of libelant's contribution in general average as the policy valuation bore to the contributory value of the cargo, but that the amount of libelant's general average contribution, together with the amount paid for the loss on the cargo, being less than the policy value, libelant was entitled to recover the full amount so paid in general average; the rule applied being applicable to cargo and ship alike.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1248, 1249; Dec. Dig. § 477.*

Marine insurance, general average, see note to Pacific Mail S. S. Co. v. New York, H. & R. Min. Co., 20 C. C. A. 357.]

Appeal and Cross-Appeal from the District Court of the United States for the Northern District of California.

In Admiralty. Libels by Maldonado & Co., Incorporated, against the British & Foreign Marine Insurance Company to determine the liability of the insurance company as an underwriter for general average contribution on valued marine policies covering the usual perils. From

a decree fixing the insurance company's liability, both parties appeal. Reversed, with instructions.

Andros & Hengstler and Louis T. Hengstler, for appellant.

Page, McCutchen & Knight, for appellee and cross-appellant.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The libelant, a mercantile corporation of San Francisco, charterer of the ship Germanicus, intending to import from the East Indies a large quantity of kapok in bales, procured from the respondent, the British & Foreign Marine Insurance Company, insurance thereon against perils of the sea, including general average contributions payable by the goods insured. The merchandise was valued at cost on board and 10 per cent. added thereto, amounting in the aggregate to the agreed or policy value of $48,632, and was insured in that amount. The insured voyage was from Sourabaya, via Kobe, Japan, to San Francisco. On shipment of the goods the libelant, as charterer of the ship, issued bills of lading on its own forms containing a clause which provided that freight on the goods shipped should be deemed earned "ship or goods lost or not lost." On the voyage the ship took fire from some unknown cause, and to prevent the destruction of the ship and cargo the master ran the vessel upon the shore and caused large quantities of water to be poured upon the cargo, thereby extinguishing the fire. After necessary repairs the ship proceeded on her voyage and reached San Francisco. Part of the ship's cargo was destroyed, part injured by fire, and part either destroyed or damaged by water used in extinguishing the fire.

After the arrival of the ship at San Francisco, an adjustment of the losses in general and particular average caused by the fire and water was made up. The damage by fire to the insured kapok was found to be $7,037.87. This amount the respondent paid to the libelant in full. The contribution in general average which the adjustment showed was payable by the insured cargo of the libelant as its share of the sacrifices made and expenses incurred for the protection of the ship and cargo was $22,544.77. This amount the libelant paid to the shipowner and thereupon made claim to the respondent for that amount as indemnity under the policy of insurance for loss on account of general average. The freight charge amounted to $6,300, but in making up the adjustment of general average the adjuster did not treat freight as a contributory interest, because, under the bills of lading, it was payable at all events "ship or goods lost or not lost," and therefore was never at risk on the voyage. The value of the cargo as a contributory interest was taken on the basis required in general average of its net market value on delivery at destination, deducting therefrom such expenses as the merchant must incur in the event of delivery and will escape in the event of total loss. It was because the merchant would not in the event of total loss have escaped payment of freight that this expense was not deducted. The contributory value of the insured goods was found to be $66,513.29, and on this value the libelant paid to the ship its contributory share of the general average adjustment, amounting to $22,544.77. The libelant on making pay-

ment of this contribution applied to the respondent as the insurer of its general average for indemnity in the said sum of $22,544.77. The respondent declined to pay more than that proportion of libelant's contribution in general average which the amount insured, to wit, $48,-632, bore to the contributory value of libelant's goods, to wit, $66,-513.29. The respondent accordingly paid to the libelant as indemnity for its general average contribution the sum of $14,034.71 instead of $22,544.77, the amount of the general average contribution paid by the libelant. The difference between these two amounts, to wit, $8,-510.06, is the aggregate sum in controversy in this action.

For the purpose of stating the contentions of the parties and the issues arising upon the facts on this appeal, it has been stipulated by the parties to the action that the following are the issues to be determined in the case:

"(1) The libelant claims that, under the law, it is entitled to receive from the respondent the same proportion of the amount of its contribution in general average as the amount insured by the policy bears to the valuation in the policy. In this case, these are alike; hence the insurer must pay the full amount paid by libelant. If this be true, and if the contributory value found by the adjuster be the just contributory value of the goods, the libelant is entitled to a decree for eight thousand five hundred ten and $6/100$ ($8,-510.06) dollars, with interest from March 8, 1906.

"(2) The respondent denies the correctness of the rule as above stated and claims that, under the law, it is required to pay only such proportion of the amount of the libelant's contribution in general average as the policy valuation bears to the contributory value of the cargo. If this be true, it it conceded that the claim of the libelant under the policy has been paid, and a decree for the respondent should be entered with costs.

"(3) If the court decide that respondent is wrong in the rule as above claimed by it, respondent still claims that its liability under its policy is limited to the amount of libelant's contribution ascertained on the basis of the value of the goods at San Francisco, exclusive of the freight on such goods. If the court sustains the respondent, in this view, yet sustains the libelant as to the rule in the first paragraph, the libelant is entitled to recover only six thousand three hundred nineteen and $69/100$ ($6,319.69) dollars with interest from March 8, 1906, and the decree of the court below should be affirmed."

The adjustment under which the libelant was required to contribute the sum of $22,544.77 in general average was based upon a valuation of $66,513.29 placed upon libelant's goods by the adjuster as their value in San Francisco at the time of their discharge. The valuation of the contributory cargo at the time and place of discharge is the established rule in general average.

"All those interests which were at risk when that (sacrifice) was made and which have continued safe down to the arrival at the destination or other place at which the voyage is terminated must contribute in proportion to their values at that place." Carver on Carriage by Sea, § 416.

"Again the amount to be made good, and the contributing interests are valued at the time and place of the termination of the voyage." Id. § 418.

"Both for contributing and for being contributed to, the values of the goods are ordinarily estimated upon the market prices at the place of adjustment on the date of the discharge." Id. § 419.

If this rule is followed in the present case, it disposes of the question whether a deduction should be made from the valuation of the goods on account of the freight charge amounting to $6,300 for their

carriage from port of shipment to port of discharge; but it is contended by the appellant that, as freight was paid by the libelant under an agreement that freight on the goods shipped should be deemed earned "ship or goods lost or not lost," the freight was not at risk to the shipowner and he had no insurable interest in it; but, as freight continued to exist as an entity, it was at risk to the libelant and could have been so insured if libelant had deemed it advisable to transfer the risk to the insurance company. But was it at risk to the libelant as freight? Manifestly not. It was absorbed, so to speak, in the cargo to be lost or realized in the value of the cargo at the port of destination. In Carver the rule is stated, in section 44, as follows:

"Freight cannot, strictly speaking, be said to be at risk unless the payment of it depends upon the safety of the cargo or of the ship. If, by agreement, it has been paid in advance, or is unconditionally payable at a certain time, it is not at risk as freight. For the contract to pay is not altered by a loss of the goods, or ship; and the amount paid in advance is not repayable by the shipowner upon the loss.

"But where the merchant has paid or is liable to pay freight on goods independently of arrival, the value of the goods at the destination, upon which he is to make or receive general average contribution, must be estimated without any deduction of that freight; for their full value without deduction of freight was at risk to him."

In Frayes v. Worms, 19 C. B. (N. S.) 159, reported as Trayes v. Worms, 34 L. J. C. P. 274, the charterer of a ship who had paid freight on his cargo was held liable to contribute to general average in respect thereof. In commenting on this case Carver, in section 440, says:

"Whether this contribution was in respect of an interest in freight or of an interest in cargo was not decided. But the latter seems the clearer view."

In Lowndes on the Law of General Average, § 70, c. 307, the rule is stated as follows:

"The cargo is to contribute on its net market value at the date of delivery, or at the time and place which form the basis of adjustment, deducting therefrom such expenses as the merchant must incur in the event of delivery and will escape in the event of total loss."

Had there been a total loss in the present case, the libelant would not have escaped the payment of freight. The charge of freight could not therefore under this rule be deducted from the market value of the goods at the date and place of delivery. Besides, freight is not a fixed or certain element of market value of goods, whatever it may be to the owner of a vessel employed in their carriage. It may be that the cost of carrying goods from one port to another enters into and determines to a limited degree the price at which the goods will be sold; but it does not follow that at any given date the value of goods in the selling market is increased or determined by the amount of freight from the port of shipment to the port of discharge.

"The market value is affected by many causes, the chief of which is supposed to be the extent of the supply compared with the demand." Gant v. Peaslee, Fed. Cas. No. 5,212.

"The market value of goods is the price at which the owner of the goods or the producer holds them for sale; the price at which they are freely offered in the market to all the world; such prices as dealers in the goods are

willing to receive and purchasers are made to pay when the goods are bought and sold in the ordinary course of trade." Charge of Judge Hoffman to the Jury in the Champagne Cases, approved by the Supreme Court in Cliquot Champagne, 70 U. S. (3 Wall.) 114, 125, 18 L. Ed. 116.

We are of the opinion that the libelant's contribution in general average was correctly determined by the adjuster upon the basis of the market value of the libelant's goods at the port of destination without deduction for the amount of the freight payable "ship or goods lost or not lost" by the libelant, and that the respondent is liable on its policy of insurance for such contribution in general average.

The next question is whether, in view of the fact that the libelant was insured to the full amount of the policy valuation, the respondent is required to pay the full amount paid by the libelant in general average, to wit, $22,544.77, or only a portion of the amount of the libelant's contribution in general average; that is to say, such proportion of $22,544.77 as the insurance and policy value of $48,632 bears to the contributory value of the cargo, $66,513.29.

The first observation to be made in answering this question is that a contract of insurance is a contract of indemnity, and in this case the respondent undertook in its policy of insurance to indemnify the libelant for its loss by general average contribution, if any there should be, within the limit of a valuation of $48,632, upon which amount the insurance was effected and the premiums paid. Libelant's loss in general average contribution was $22,544.77. Libelant, therefore, contends that it is entitled to be paid the whole of this sum, as it does not exceed the limit of the insurance of $48,632. But it appears that in England, if the ship or cargo is thus insured and the policy valuation is less than its contributory value, the underwriter does not pay as indemnity for loss in general average the full amount of the loss, but in the proportion that the amount insured in the policy bears to the contributory value. On the other hand, if the policy valuation of the ship or cargo is more than the contributory value, the underwriter pays in the proportion that the amount insured bears to the policy valuation. Steamship Balmoral Co. v. Marten (1902) A. C. 511; section 73, English Marine Insurance Act, 1906 (Stats. 1906, 216, 233). In the present case, as the cargo was insured for less than its contributory value, respondent invokes the English rule as the measure of its liability. The contract having been made in this country, the inquiry must be whether the maritime law of the United States is the same as that of England.

In Loring v. Neptune Ins. Co., 20 Pick. (Mass.) 411, 414, Chief Justice Shaw said:

"In general it is to be presumed that both the assured and the underwriter are acquainted with the nature of the business, in respect to which they contract; that they are acquainted with the customs and usages of that business, and consent to conform to them, unless there be some stipulation to the contrary. It is well known therefore to both parties that the assured may have to pay, in respect to losses insured against, general averages; that these averages may be adjusted abroad; and that the assured will be bound by such adjustment, although, making it conformably to the law and usage of the places where made, both the sum to be contributed and the contributory interests may be estimated upon the principles, varying from those which prevail at the place where the contract of insurance is made. It seems to fol-

low as a necessary consequence that when the assured has incurred a general average loss within the perils insured against, when such loss has been adjusted at the proper place, and in a mode conformable to the law and usage of such place, and when the assured has thus become bound to pay and has paid such loss, he is entitled to recover it of the underwriter, although the contributory interests have been estimated upon a principle different from that of the place where the policy was underwritten."

In Peters & Co. v. Warren Ins. Co., 1 Story, 463, 470, 471, Fed. Cas. No. 11,034, Mr. Justice Story followed this rule and said:

"The contract of insurance is a contract of indemnity against risks and losses by the perils insured against, not only in the home port, and on the ocean, but also in foreign ports. It naturally, therefore, looks to general averages, which may be incurred and enforced abroad as well as at home. If by a peril insured against the insured is compelled in a foreign port, by the local law, to pay a sum as general average, which by the law of his own country would not be so, why may not such a loss or charge be properly deemed a general average in the sense of the policy?"

And after referring to a number of cases, including the case of Simonds v. White, 2 B. & C. 805, said further:

"There is nothing unreasonable in construing the engagement of the underwriters in a policy to be that they will pay whatever the insured is compelled to pay as a general average arising from the risks insured against."

In Strong v. New York Ins. Co., 11 Johns. (N. Y.) 320, it was held that where a general average is fairly settled, in a foreign port, and the insured is obliged to pay his proportion of it there, he may recover the amount so paid by him from the insurer, though such general average may have been settled differently abroad from what it would have been in the home port. To the same effect was the decision in the case of Depau v. Ocean Ins. Co., 5 Cow. (N. Y.) 63, 15 Am. Dec. 431. These authorities not only sustain the proposition that the liability of the insurance company for the general average contribution of the insured is determined by the law of the port of destination, but they sustain the other proposition that the contract of insurance is a contract of full indemnity against loss, including a loss on account of general average contribution, provided the total loss of the insured is within the limit of the insured valuation. This is what is known as the New York or American rule, which in the case of Loring v. Neptune Ins. Co. and Strong v. New York Ins. Co. was applied to losses for general average contribution on cargo and in Peters v. Warren Ins. Co. was applied to a vessel for a loss by collision apportioned by a foreign adjustment in general average, and in Depau v. Ocean Ins. Co. for expense incurred in repairing vessel in foreign port stated in both general and particular average adjustments.

In the case of Steamboat Balmoral Company v. Marten, A. C. (1902) 511, the rule which fixes the liability of the insurance company for general average contribution upon the basis of the valuation provided in the policy, when that valuation is less than the contributory value of the insured goods, and upon the contributory value when such value is less than the policy value, is designated as the "English rule." This rule, having been followed in the Supreme Judicial Court of Massachusetts in 1811 in the case of Clark v. Insurance Co., 7 Mass. 368.

5 Am. Dec. 50, has also been referred to as the "Boston rule." The rule which holds that the liability of the insurance company is upon a contract to indemnify the insured for a loss by contribution within the sum insured and named in the insurance policy as a valuation is designated as the New York rule. An examination of the cases in which this question has been considered shows that this designation of these two rules is not inappropriate.

Which of these two rules prevails in the port of San Francisco? Section 2744 of the Civil Code of California provides as follows:

"A marine insurer is liable for a loss falling upon the insured, through a contribution in respect to the thing insured, required to be made by him towards a general average loss called for by a peril insured against."

This provision was taken from the proposed Code of Civil Procedure of New York (section 1511) and was undoubtedly framed as the embodiment of the law of that state, as has been held in Strong v. New York Ins. Co., 11 Johns. (N. Y.) 320, and Depau v. Ocean Ins. Co., 5 Cow. (N. Y.) 63, 15 Am. Dec. 431.

In the later case of Providence & Stonington S. S. Co. v. Phœnix Ins. Co., 89 N. Y. 559, the steamer Massachusetts was insured against perils of the sea and navigation in various sums amounting to $75,000, and this for the purpose of the insurance was declared to be the value of the vessel. During the life of the policy the vessel went ashore in a violent storm and was in danger of becoming a total wreck. By the aid of a wrecking company she was set afloat and reached New York, where she was docked for repairs. The repairs amounted to $46,000, which was paid by the insurers. The wrecking company rendered a bill for services which with other expenses amounted to $21,-840. A statement in general average was made up in which the value of the steamer was stated at $275,000. The insurance company denied any liability for any part of the expenses on the ground that the payment of $46,000 covered the entire damage caused by the perils insured against, but if otherwise it was claimed that the liability of the insurance company should be limited to such proportion of $21,-840 as the agreed value of the steamer, to wit, $75,000, bore to its value as stated in general average, to wit, $275,000. The lower court held that the interest of the insurer was to be limited to the sum fixed in the policies as the value of the steamer, and the interest of the insured to the difference between that sum and its actual value as fixed by the adjuster so that the share of expenses to be charged to each should bear the same proportion to the value of his interests as the whole sum bore to the appraised value of the ship. This is another way of stating that part of the English rule which holds that the insurance company has discharged its liability for a general average contribution paid by the insured when it pays, not the full amount of the contribution, but such proportion of that contribution as the value stated in the policy bears to the contributory value of the goods insured. But this rule was repudiated by the New York Court of Appeals, and the court followed what is known as the New York or American rule, under which the insurance company is held liable to indemnify the insured, as before stated, for all losses on account of

damages caused by the perils insured against within the sum insured and named in the insurance policy as a valuation.

This rule was followed by Judge Brown in International Co. v. Atlantic Ins. Co. (D. C.) 100 Fed. 317. But this last case involved questions not in the present controversy. These questions related to the separate and distinct risks covered by the several policies and the stipulations as to the liability of the insurance companies with respect to such risks, and there had been no adjustment for general average contribution; but the general question we have under consideration was discussed by Judge Brown with his usual ability and is therefore instructive for that reason. In that case the actual value of the steamer St. Paul was $2,100,000. She was insured for about $1,350,000 in numerous policies in which it was valued at the latter sum. The steamer was stranded. The items of loss and expense caused thereby for salvage, legal expenses, and repairs amounted to $248,377.28. The items for salvage were based upon two judgments against the vessel. The legal expenses and repairs were proven claims. The whole amount was claimed pro rata from the insurance companies. They contended, among other things, that they were not liable for the full amount of these charges, but that, as the policies were valued policies and the ship valued at only two-thirds of her actual value, the insurance companies were liable for only the same proportion; that is to say, for two-thirds of such loss and expenses. The court stated that the rule in England and Massachusetts appeared to be as the insurance companies contended; but the court, refusing to follow this rule, said:

"In my view, the New York rule is most consonant with the terms of valued policies and with the object of a valuation, which is to limit both parties on the question of value. Insurance Co. v. Hodgson, 6 Cranch, 206, 220, 3 L. Ed. 200. When the value has been fixed by agreement, the owner should not be compelled to stand constructive insurer (in a settlement between himself and his actual insurers) of any uninsured value of his ship beyond the amount agreed on in the policy. Yet that is the precise effect of the English and Boston rule. In case of total loss, or of partial loss and repair, the owner is held estopped from claiming beyond the agreed value. The estoppel ought to be mutual (3 Kent, Comm. 274); and the insurer who has agreed to a fixed value of the ship ought not to be allowed, in case of a loss within the policy, to reject the valuation and to reduce the claim upon him on the mere ground that the vessel is worth more than the sum agreed upon, and that the owner should stand constructive insurer as to the excess, and bear, with the actual insurers, a pro rata share of the loss. Such a rule is unequal and unjust, since it enforces the valuation as against the owner, but ignores it as against the insurer. If there would be some equity in favor of that rule where the undervaluation was unknown or concealed, there would seem to be none where, as in the present case, there can be no doubt that the undervaluation was known to the insurers, accepted by them as the basis of the contract, with presumably an increased rate of premium proportionate to any increase of risk incidental to the undervaluation."

In the present case the respondent makes the point that the case of Providence S. S. Co. v. Phœnix Ins. Co., and the last case (generally referred to as the "St. Paul" Case), were both cases of insurance of hull and not on cargo, and that the reasoning of Judge Brown in the St. Paul Case leads to the conclusion that the New York courts would distinguish the case of cargo insurance from that of hull insurance,

and would apply the rule of proportion to a policy like the case at bar. Judge Brown was dealing in that case with a number of questions relating to the liability of insurance companies for marine losses, among others, the liability of the insurer for particular average losses, and it was held that the measure of the insurer's liability in case of particular average loss payable on the ship was in the proportion that the amount insured bears to the policy valuation; and it was said by way of contrast that the measure of the insurer's liability in cases of particular average payable as loss on cargo was to be based on the proportion that the damaged value of the goods bears to their sound value at the place of discharge. The reason given for this distinction was that:

"Ships are not employed as merchandise, nor insured as such; but as carriers. If damaged, they are not expected to be sold, but to be repaired for continued use by the owner, or for the necessary completion of the voyage. Nor is there any such usual market for vessels as for goods, by which the loss or damage could be fairly ascertained by a sale; nor could sales of damaged vessels be ordinarily made or required without great prejudice to all concerned—to the underwriters as well as to the assured."

Whatever the reason for the distinction may be, while Judge Brown recognizes the fact that it exists, he does not say that the rule regarding the insurer's liability for a contribution in general average on a ship, as enforced by him, does not equally apply in case of a liability for contribution on goods. The English rule applies in England to ship and cargo alike. No case has been cited holding that there is any distinction in this respect. There is the further objection to the English rule that it fixes the liability of the insurance company for general average contribution upon the basis of the valuation provided in the policy when the valuation is less than the contributory value, but rejects that valuation when it is more than the contributory value and fixes the liability upon the latter valuation. It is a rule that works always for the insurance company and never for the insured. As Judge Brown says:

"The insurer who has agreed to a fixed value of the ship ought not to be allowed, in case of a loss within the policy, to reject the valuation and to reduce the claim upon him on the mere ground that the vessel is worth more than the sum agreed upon and that the owner should stand constructive insurer as to the excess and bear with the actual insurers a pro rata share of the loss. Such a rule is unequal and unjust, since it enforces the valuation as against the owner, but ignores it as against the insurer."

We submit further that there is no substantial or satisfactory reason why there should be one rule for the liability of the insurance company upon a general average loss with respect to the contributory value of the cargo and another and different rule for its liability with respect to the contributory value of the vessel employed in carrying the cargo. Judge Brown refers to the obvious fact that the rule of proportion with respect to cargo is not "a strictly logical construction of the policy, but as giving an easy and practical solution of a difficult question of adjustment under diverse circumstances, and one that is proximately exact when the policy value is the true valuation as it was formerly supposed to be." This is undoubtedly true; but, on the other hand, we believe the American rule of indemnity to be a fair

and just rule, and when it is within the terms of the policy should be followed, particularly in view of the further general and accepted rule stated by the learned judge in a previous part of the same opinion. He says:

"The language of the policy is, moreover, the language chosen by the insurers. In case of doubt, it is not only to be construed against them, but is further subject to the rule of construction that it must be understood in the sense in which the insurers knew that the assured understood or would naturally understand it."

To this we may add that the insurance companies have always proven attentive and skillful in providing in their insurance policies stipulated exemptions from liability. As the indemnity claimed by the libelant in this case has not been excluded by any express stipulation in the policy under consideration, it is a fair and reasonable presumption that such exclusion was not intended.

The St. Paul Case was appealed to the Circuit Court of Appeals for the Second Circuit and there affirmed. 108 Fed. 988, 48 C. C. A. 181.

The stranding of the St. Paul gave rise to another case entitled International Nav. Co. v. Sea Ins. Co. (D. C.) 124 Fed. 93. The same case in the Circuit Court of Appeals is reported in 129 Fed. 13, 63 C. C. A. 663. In this case there had been a general average adjustment, and the action was to recover of the respondent its contributory share of $248,377.28, the loss sustained by the libelant on account of the stranding of the vessel. The respondent was a British corporation and issued the policy of insurance in London. The policy contained the following provision:

"General average, salvage, and special charges as per foreign custom, payable according to foreign statements or per York-Antwerp rules, or York-Antwerp rule of 1890, or per rules of port of discharge, if in accordance with contract of affreightment at the option of the assured."

The judge of the District Court states the controversy as follows:

"The question is whether an English insurance policy on a vessel should bear the expense arising from stranding in the ratio of the loss to the actual value, which is the English rule (Balmoral Company, Ltd., v. Marten, 2 Q. B. [1900] 748, affirmed in Court of Appeals L. R. 2 K. B. [1901] 896, affirmed in House of Lords L. R. App. Cases [1902] 511), or in the ratio of the loss to the policy value according to the rule at New York, the port of discharge (International Navigation Co. v. Atlantic Mutual Ins. Co. [D. C.] 100 Fed. 304, affirmed in 108 Fed. 987, 48 C. C. A. 181)."

In the Circuit Court of Appeals the court stated the controversy as follows:

"The question in dispute is whether under a valued policy, where salvage has been awarded on a higher valuation, the insured can recover ratably from the several underwriters the salvage he has had to pay, or only such part of it as is in the same proportion to the whole salvage paid as the total policy valuation is to the valuation on which salvage was awarded. * * * The respondent's method of calculation is in accord with the English law. The libelant's is in accord with American law."

The decree followed the New York or American law, and this decree was affirmed by the Circuit Court of Appeals.

Section 2744 of the Civil Code of California establishes the New York or American rule for the port of San Francisco, and, as that rule

makes the insurer liable for "a contribution falling upon the thing insured," we are of the opinion that under the policy in this case the rule is applicable to cargo and ship alike, and that the libelant is entitled to recover from the respondent the same proportion of the amount of its contribution in general average as the amount insured in the policy bears to the valuation in the policy. As these two amounts are the same, the respondent must ·pay the libelant the full amount paid by it in general average.

The judgment of the District Court is reversed, with instructions to enter a decree in favor of the libelant for the sum of $8,510.06, with interest from March 8, 1906.