## GULF REFINING COMPANY *v* ATLANTIC MUTUAL INSURANCE COMPANY.

No. 506.   Argued April 17, 1929.—Decided May 27, 1929.

Mr. *Ira A. Campbell* for petitioner.

Mr. *J. M. Richardson Lyeth* for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

Respondent issued a war risk insurance policy for $27,-690 upon a cargo of gasoline, owned by petitioner's predecessor in interest and valued in the policy at $212,000, on board the tanker " Gulflight," bound from Port Arthur, Texas, to Rouen.   On the voyage the " Gulflight " was torpedoed and put into a port of refuge where, in consequence of the injury to the ship, damages and expenses of a general average nature were incurred.   A general average contribution of $49,088.04, the correctness of which is not questioned, was assessed against the cargo on the basis of the actual value of the cargo at destination, which was taken to be $417,178.   Petitioner made claim on the policy for indemnity of $6,411.54, the proportion of the general average contribution which the amount of the policy bore to the agreed policy value of the cargo.   Respondent paid only $3,258.25, that portion of the indemnity claimed which the agreed policy value bore to sound value at the time of the contribution, or that portion of the general average contribution which the amount of insurance bore to sound value.

In a suit in admiralty in the District Court for Southern New York to recover the balance claimed, that court confirmed the report of its Commissioner, 1927 Am. Mar. Cas. 1669, and gave judgment for petitioner, which was reversed by the Court of Appeals for the Second Circuit.  27 F. [2d] 678.  This Court granted certiorari, 278 U. S. 595, because of a conflict of opinion between that and the Court of Appeals for the Ninth Circuit. *British & Foreign Marine Insurance Co.* v. *Maldonado & Co.*, 182 Fed. 744, certiorari denied, 220 U. S. 622.

The sole question presented here is whether, in adjusting a general average loss upon cargo insurance under a valued policy, the insured is co-insurer to the extent that the sound value of the cargo at the time of contribution exceeds its agreed value or, stated in somewhat different

form, whether the effect of a valued policy on cargo, in limiting the liability of the insurer, is the same in the case of a general average as of a particular average loss.

It has long been the accepted rule that in the case of a partial loss of cargo insured under a valued policy, with the valuation honestly made, the insured, in case of increase or decrease in its value, recovers that proportion of his loss which the agreed value, or so much of it as was assumed by the particular insurer, bears to the sound value. In case of an increase in value his recovery is thus limited as though he were a co-insurer. *Lewis* v. *Rucker*, 3 Burr. 1167; *Johnson* v. *Sheddon*, 2 East 581; see *Tunno* v. *Edwards*, 12 East 488; *Lawrence* v. *New York Insurance Co.*, 3 Johns. Cas. (N. Y.) 217, 218; *Forbes* v. *Manufacturers' Ins. Co.*, 67 Mass. 371; *London Assurance* v. *Companhia de Moagens*, 167 U. S. 149, 171; *British & Foreign Ins. Co.* v. *Maldonado, supra; International Navigation Co.* v. *Atlantic Mutual Insurance Co.*, 100 Fed. 304, 317, 318, affirmed 108 Fed. 987, certiorari denied 181 U. S. 623.

So applied the rule permits the adjustment of the premium to an assumed certain and unchanging value of the subject of the insurance and protects the underwriter against increases in liability because of increase in value of the cargo, as it protects the insured against diminution of his right to recover which might otherwise result from a decrease in value. It recognizes that the purpose of valuing the cargo is not to fix the maximum amount of recovery, which is accomplished by limiting the amount of the policy, but to eliminate from the risk which the insurer assumes so much of it as is consequent upon fluctuations of the market value of the cargo, whether the loss be total or partial. For under it the insurer's liability for the loss suffered can never be greater or less than if the actual value were the agreed value.

Agreed value thus stands in the place of prime value under an open marine policy where the insured recovers such part of his loss as prime value bears to sound value. See *Lewis* v. *Rucker, supra,* at p. 1171; *Usher* v. *Noble,* 12 East 639, 646; *Clark* v. *United M. & F. Insurance Co.,* 7 Mass. 365.

Petitioner does not question the soundness of the rule when applied to partial loss of cargo, but argues that it should not be applied to general average contributions. It is said that petitioner need not refer to sound value to compute its loss, which is already fixed by the general average adjustment, and the valuation clause estops the insurer from showing that the sound value of the cargo was greater than the agreed value and so reducing the amount of its indemnity; also that the rule to be applied to the present case should be the same as that applied to insurance on hulls, where the insured is allowed to recover in full for a partial loss up to the amount of the insurance. Finally, it is insisted that this clause of the policy should be construed as having been adopted by the parties in contemplation of the rule contended for as one established by the decisions in New York, where the policy was effected, and as settled in *British & Foreign Marine Insurance Co.* v. *Maldonado & Co., supra.*

Liability for general average contributions is a risk insured against by the marine policy as is loss by particular average. Its amount, as in the case of a particular average loss, is dependent upon and varies with the sound value of the goods. There is nothing in the policy to suggest that the liability of the insurer is to be computed on a basis different in the one case from the other, and a clause whose general use and effect is to limit risk from fluctuation of value of the cargo insured is equally applicable in both classes of risks. Such a limitation is justified in both cases by the fact that the only assign-

able purpose of the agreed value is to substitute a definite for an uncertain prime value and to eliminate from the contract, in the interest of both the insured and the insurer, the fluctuation of liability which would otherwise result from a change in sound value. To allow petitioner to recover for the loss suffered in double the amount which concededly would have been its recovery had the same loss resulted from fire, jettison or other partial loss of cargo, would be an anomalous result for which petitioner offers no justification in reason or in generally established principles of marine insurance law. The co-insurance principle long and consistently applied in the case of particular average losses under both open and valued policies, gives a reasonable and equitable effect to the stipulation fixing value, consonant with principles generally applicable to marine insurance. It may be applied to general average contributions with like effect and with added consistency and harmony in the law.

The application of the agreed value to the adjustment of the insurance loss does not depend on estoppel as was suggested in *British & Foreign Marine Insurance Co.* v. *Maldonado & Co.*, *supra*. The policy agreement valuing the cargo at a specified amount is not a representation, or so regarded. It is no more than a stipulation, in effect, that for purposes of computation of the insurance liability the cargo shall be taken at an agreed value. Within this limitation the policy is still a policy of indemnity and the insured must prove the sound value of the cargo in order to ascertain his actual loss, by deducting from it the amount of the proceeds of the damaged cargo. In every particular average adjustment the insurer may rely on the sound value of the cargo in order to establish the extent to which the insured is a co-insurer. It is true that a general average contribution is always determined and stated in terms of money and so the insured may

establish his loss merely by proof of its amount, but his contribution is itself based upon sound value which entered into its computation, and its amount for all practical purposes, as in the case of particular average, is increased in proportion to the excess of sound value over agreed value, see *S. S. "Balmoral" Company* v. *Marten,* [1902] App. Cas. 511, 514, 515. We perceive no reason why his recovery may not likewise be reduced accordingly.

The rule that the insured may recover in full for partial losses under hull insurance, *International Navigation Co.* v. *Atlantic Mutual Insurance Co., supra; International Navigation Co.* v. *Sea Insurance Co.,* 129 Fed. 13; *Providence & S. S. S. Co.* v. *Phoenix Insurance Co.,* 89 N. Y. 559; *contra Clark* v. *United M. & F. Insurance Co., supra;* cf. *Brewer* v. *American Ins. Co.,* 123 Mass. 78, does not, we think, militate against the co-insurance rule as applied to cargo insurance, or afford support for that for which petitioner contends. We need not determine whether the rule as to hull insurance may be regarded as that of this Court or of others, or pass upon its merits. The distinction between insurance on cargo and that on hulls is an old one and a different result in the case of the latter may for that reason be accepted without affecting the rule as to the former. Where the distinction has been regarded as established, the departure from the rule applied in case of particular average losses of cargo has been justified on the ground that damage to a hull is not customarily ascertained by its sale, as is the case with cargo. The usual practice in cases of partial loss is for the insured to make repairs. His repair bill represents a sum of money which is the amount of his damage, ascertained without regard to the ship's value, and so the rule has been adopted as more convenient in practice than one requiring determination of the sound value of the ship. See *Lohre* v. *Aitchison,* L. R. 2 Q. B. D. 501, 507. Some

point is given to this explanation by the ruling in *Pitman* v. *Universal Marine Insurance Co.*, L. R. 9 Q. B. D. 192, that the same rule should be applied as in particular average loss of cargoes, where the repairs were not in fact made and the loss was established by a sale of the ship. And in a case of general average contribution by the hull, the House of Lords, in *S. S. "Balmoral" Company* v. *Marten, supra,* held the insured to be a co-insurer, thus applying the rule accepted in the case of partial cargo losses, and implicitly supporting the co-insurance rule applied below to general average contribution by cargo.

It is said that this rule would result in a recovery by the insured of more than the amount of his contribution, in event of a decrease in the value of the cargo below the agreed value. The court below seems to have thought that this might be so. But no court has so held. The insured in the case of partial loss of cargo whose sound value is less than the agreed, may recover more than his actual loss, since in computing the indemnity the cargo must be taken at the agreed value. But where there is in fact no loss of the cargo, it is not entirely clear upon what theory the insured could increase his recovery beyond his contribution in general average by any recourse to the agreed value. Having the cargo intact, no matter what its value, it may well be that the insured must needs be content with the discharge of the general average lien upon it.

While an appellate court may hesitate to set aside a rule of commercial law long and generally accepted and applied, such is not the case with the suggestion that general average contributions must stand on a different footing from particular average losses under a valued policy on cargo. That has been thought to be the effect of an early New York case, *Strong* v. *New York Firemen Insurance Co.*, 11 Johns. (N. Y.) 323, in which counsel for the in-

surer argued against any such distinction. But the court seems to have considered that the only question before it was whether a general average adjustment made in a foreign port was enforceable against the insurer even though made under rules different from those in force in the home port. Diligent efforts at the trial of the present case to prove a custom failed. The commissioner's finding that no settled custom or usage was proved is not challenged here. He found that underwriters, the *Strong* case notwithstanding, did not usually pay general average contributions in full when sound value exceeded agreed value; that after the decision in the *Maldonado* case, refusals to pay on the basis of full contribution were less frequent, but some underwriters, including respondent, continued to settle on that basis and the failure to bring the issue before a court for adjudication was due to the fact that the amounts involved were too small to justify litigation.

The Massachusetts courts have followed the rule applied below. *Clark* v. *Universal F. & M. Insurance Co., supra,* cf. *Brewer* v. *American Ins. Co.; supra.* The other American cases have dealt with insurance on hulls and so are not decisive. The fact that the co-insurance rule has been applied to general average contributions in England, both by judicial decision, see *S. S. "Balmoral" Company* v. *Marten, supra,* and by statute, Marine Insurance Act, 1906, § 73, and that such is conceded to be the rule by law or custom in France, Germany, Holland and Japan, is of weight in making a choice of two conflicting rules applicable to sea-borne commerce. We conclude that the rule applied below is the more consonant with principle and the more consistent with other accepted doctrines of marine insurance, and that the judgment below should accordingly be

*Affirmed.*