TENNESSEE FARMERS MUTUAL FIRE INSURANCE CO., Plaintiff in Error, v. WILSON THOMPSON, et al., Defendants in Error.

Middle Section. December 6, 1930.

Ed. T. Seay, of Nashville, and Lillard Thompson, W. B. Williams, and Louis Chambers, of Lebanon, for plaintiff in error.

C. C. Davis and Walter S. Faulkner, of Lebanon, for defendant in error.

DeWITT, J. Wilson Thompson and his wife, Mrs. Lucile Thompson, brought this action against Tennessee Farmers Mutual Fire Insurance Comuany and Dan E. Seay, agent to recover the sum of $1000 upon a policy of insurance against fire, and a penalty of 25% thereof for refusal in bad faith to pay said amount. By amendment Mrs. Mary Womack Holtz was added as a plaintiff as the holder of a lien note against the property destroyed. Upon the first trial the jury disagreed and a mistrial was entered; upon the second trial, the jury returned a verdict in favor of the plaintiffs below for $1000 and a penalty of $250 and the costs of the cause against the Insurance Company, but a motion for directed verdict was sustained in favor of Dan E. Seay.

The defenses were and are: "That there was no completed contract of insurance entered into between the Company and the plaintiff; that an application for the insurance made by the plaintiffs had been countermanded or cancelled before the fire; that at the time of the taking of the application the plaintiffs had more insurance upon the property than they disclosed in the application, and this would have voided the insurance even had it otherwise been a valid completed contract of insurance.

The first two assignments are that there is no evidence to support the verdict of the jury and that the Court erred in overruling the motion of the Insurance Company for a directed verdict made at the conclusion of all the evidence offered at the trial. These assignments will be treated together.

The defendant Tennessee Farmers Mutual Fire Insurance Company was chartered and organized and is operating under the laws of the State of Tennessee. It has its principal office in Nashville, Tennessee and it has soliciting agents in various counties in Tennessee, authorized and empowered to solicit insurance, to take applications for insurance, and to receive the first premium from the applicants, subject to approval and acceptance of the application by the Company. Dan E. Seay, a farmer living in Wilson County, was in 1927 such agent of said Insurance Company and he was also a director in said Company. On October 4, 1927, he visited the plaintiff Wilson Thompson, a farmer, solicited an application for insurance and said Thompson signed an application for a total amount of $1200 of insurance of which $600 was to be placed on his dwelling house, $200 on his barn, $100 on grain, $100 on hay and $200 on cattle. Thompson gave to Seay a check for $10.80 and a note for $10.80, the sum of the two constituting the premium for the first year on the policy to be issued. The application was filled out by Seay and signed, "Wilson and Lucile Thompson." It contained the following questions and answers:

"Q. Other insurance. Is there any other insurance? A. Yes.

"Q. Amount. A. $1300.

"Q. In what Company? A. North America Company, Weatherly & Phillips, Watertown agents."

Plaintiff Wilson Thompson testified that he told Mr. Seay that he owed some money on the property to Mrs. Mary Womack Holtz; that he also told him that he had about $3000 of other insurance upon the property. The evidence is undisputed that he had $3300 of insurance in policies of the Insurance Company of North America, the agents of which were Weatherly & Phillips fo Watertown, Tennessee. Mr. Thompson testified that he instructed Mr. Seay to have issued to him a policy of insurance for $500 on his residence, $500 on his barn and $200 on his cattle. It should be stated here that the residence and barn, hay and grain were destroyed by fire on October 31, 1927.

Mr. Thompson testified that he was not claiming anything upon the hay and grain destroyed, but was claiming $500 each on his residence and barn. There was no loss on the cattle. The application was forwarded by Seay to the principal office of the Company at Nashville on October 7, 1927. The following entries were made on the application: "Approved this 7 day of Oct., 1927 Policy Number 19813 issued on the application on the 7th day of October, 1927. Pauline Glick, Secretary." A paper entitled, "Agreement for additional insurance" was attached to this application reciting that "the consent of the Tennessee Farmers Mutual Fire Insurance Company is hereby granted Wilson and Lucile Thompson to have or procure additional insurance on dwelling and barn insured under policy 19813 as follows: dwelling $600, barn $500, with the Insurance Company of North America, Philadelphia, Pa. attached to and forming part of policy number 19813, October 4, 1927." This was signed by the President in behalf of the Company. A policy was issued under date of October 4, 1927, to Wilson and Lucile Thompson for $1200 in accordance with the application. It was sent to Mr. Seay, with the instruction not to deliver the policy until the Insurance Company of North America should be notified of and should give its consent to the placing of this additional insurance on the property. Mr. Seay testified that when he took the application he informed Thompson that before the policy would be delivered he must obtain the consent of the other company to this additional insurance and that the insurance applied for would not be granted or put in force until the same was done. However Mr. Thompson testified that Seay did not explain this to him or tell him that it was necessary to get such permission from the Insurance Company of North America before the fire occurred. He admitted that he told Seay to see Mr. Weathrly who was the agent of the other company and ascertain the amount of the other

insurance, which he said was near $3000 to the best of his recollection. Upon this appeal this testimony of Thompson must be taken as true. There is no evidence that a permit was obtained from the Insurance Company of North America. On the other hand, sometime after the policy came into the hands of Seay and before the fire, the exact date not being shown, and while the policy was in the possession of Seay, Mr. and Mrs. Thompson decided not to take the insurance and to withdraw their application. Thereupon, at the request of Mr. Thompson Mrs. Thompson called Mr. Seay and instructed him that they did not want the policy and for him to have it cancelled. Mrs. Thompson testified that Mr. Seay thereupon replied, "No, I am not going to cancel it. You all signed the application it is all fixed out, everything is fixed and you need it. I am just going to let it stay. I won't cancel it." She said that she insisted and said, "Mr. Seay, Wilson said to cancel it;" that Mr. Seay said, "No I am not going to cancel it, it is all fixed out and you are too late. I am just going to let it go." She said that she told her husband about this but that they did not call Mr. Seay any more. She thought that this was about a week before the fire.

Thus matters stood. Mr. Seay cashed the check. He testified that he did this unintentionally as it was with a lot of other checks which he had. He never turned the money over to the Insurance Company but said that he held it because the policy was not delivered. He did turn the note over to the Insurance Company. Mrs. Glick, the secretary of the Company, testified that Mr. Seay notified her that the insurance was to be cancelled; that thereupon the note was recorded on the agent's register as cancelled as of October 27, 1927. She also testified that the policy was regarded as cancelled on said date. The policy however remained in the hands of Mr. Seay until after the fire. After the fire occurred Mr. Seay visited Mr. Thompson and tendered him in cash the sum of $10.80 and the note. Thompson testified that he refused to receive them; that Seay told him that he did not have any insurance in his company and he threw the money and the note on the ground; that he, Thompson, thereupon took and kept the money and the note.

Mrs. Thompson testified that after she undertook to get the insurance cancelled or rather countermand the application, she visited the office of Mr. Weatherly, the agent of the Insurance Company of North America and had a conversation with his clerk and stenographer, Miss Bass; that she told Miss Bass that they had applied for the policy through Mr. Seay but had sought to countermand it but Mr. Seay would not agree to it; and that she asked Miss Bass to tell Mr. Weatherly about it. She testified that Miss Bass agreed to so notify Mr. Weatherly. Miss Bass testified that Mrs. Thomp-

son did not ask her to obtain the consent of the Insurance Company of North America to the additional insurance but told her of the application saying that she did not know whether it had been cancelled or not; that they had not received back the premium and that she wanted those facts reported to Mr. Weatherly. Miss Bass said that she told Mr. Weatherly of the conversation.

The defendant Insurance Company insists that from these facts the only reasonable conclusion is that there was no completed contract of insurance; that the policy was conditionally issued and the condition was never complied with that the consent of the Insurance Company of North America must be obtained; and that the policy was never in force. It insists that there was a countermand or cancellation and that if the insurance was ever in force it was by this terminated.

The Insurance Company's agent Dan E. Seay, must be regarded as the agent of the Company, and not of the insured, in all matters relating to the application and the policy issued in consequence thereof. The knowledge of this agent, and his transactions with Thompson and his wife must, therefore, be imputed to the Company. So far as the defendants in error knew, or were allowed to know, it was not necessary to notify the Insurance Company of North America, or get its consent, that this policy be delivered and put in force. Application for the policy had been made without notice to the applicants that this was necessary. Seay was requested to ascertain from Weatherly and Phillips just how much insurance the defendants in error had in their Company. They relied on his obtaining this information. Seay's retention of the premium money and note was the act of the Company. His refusal to cancel the application and policy was also the act of the Company. Thompson and his wife were thereby led to believe that the insurance was in force.

The transactions between the Company and Seay, not being made known to the insured, could not avail to cancel or avoid the insurance. We must look alone to the evidence tending to support the verdict and judgment. Decisions supporting these principles are: Insurance Co. v. Fallow, 110 Tenn., 720, 77 S. W., 937; Sugg v. Assurance Society, 116 Tenn., 658, 94 S. W., 936; Maryland Casualty Co. v. McTyler, 150 Tenn., 691, 266 S. W., 767. See also Watkins v. Casualty Co., 141 Tenn., 583, 214 S. W., 78; Insurance Co. v. Schulman, 140 Tenn., 481, 205 S. W., 315; Moak v. Casualty Co., 4 Tenn. App., 287; Cheek v. Insurance Companies, 6 Tenn. App., 632; 14 R. C. L., 1170.

Assignments of error numbers one and two are therefore overruled.

The Trial Judge correctly instructed the jury that the assent of the Insurance Company of North America was not necessary to the validity of the policy sued on. Consequently, the request set forth in the third assignment was properly refused. Certain requests set forth in the fourth and fifth assignments related to the effect of the effort to countermand the application or cancel the policy. The instructions thus requested were not properly applicable to the evidence and they embodied some unsound propositions of law. The jury was instructed fully and correctly as to this issue of cancellation. These assignments are overruled.

The sixth assignment embodies a request made to instruct the jury that if they should find that Thompson signed the application before it was entirely filled out, and authorized Seay to complete it, he thereby made Seay his agent and he is bound by what Seay wrote therein.

This request was properly refused, for it would have prevented any consideration of the testimony of Thompson that he told Seay that he had about $3000 of insurance in the other Company.

In the ninth assignment complaint is made of the instructions given as follows:

"They say that they constituted at that time the agent, Mr. Seay, as their agent to whom the policy 'might be delivered by the defendant company for them, and that that appointment and designation was embodied in the application; that the company was directed, upon the approval of the application and the issuance of the policy as applied for, to send the policy to Mr. Seay for them, they constituting him as their agent to receive the policy for them. And, in this connection, I will instruct you that a delivery in this case, or in any case, of an instrument of this sort may be of two kinds, either actual or constructive; actual or manual delivery of any paper, is the deliverying of that paper into the hands of the party receiving it; a constructive delivery is that delivery or deposit or handling of the paper as, in legal effect, constitutes a delivery, even thought it is not a manual or actual placing of the paper in question in the hands of the person for whom it is intended.

"It is the insistence of the plaintiffs in this case that there was a constructive delivery of the policy of insurance, that has been exhibited to you here, in that it was sent, the plaintiffs say, to the agent, Mr. Seay, for them, pursuant to the instructions contained in the application."

"And that it was still, constructively, in their possession having been delivered to Mr. Seay, to whom they had directed the company to deliver it for them."

It is insisted that there was no evidence that the plaintiff had constituted Seay as their agent to deliver the policy.

In the application under the title, "Questions to be answered by agent," occur the following question and answer: "To whom shall the policy be sent? Agent." Of course this direction was thus made by Mr. Seay but the plaintiffs expected that they would receive the policy through him. They did not know that the policy was to be sent to him for delivery upon any condition. The rule is that an agent of the company who receives a policy for unconditional delivery to the insured is deemed an agent or trustee of the insured to receive a policy for him and his possession is regarded as the possession of the applicant. It being permissible for an agent of the company to act as the agent of both parties in the delivery of a policy. 32 Corpus Juris, 1127, citing cases. Now if the agent kept the policy without telling the applicant of any condition attached to the delivery and told the applicants that it was all fixed and the insurance was in force, as Mrs. Thompson testified, then they had a right to think that the policy was in the hands of the agent for their benefit and there was a constructive delivery of the policy.

The ninth assignment of error is therefore overruled.

In the tenth assignment it is complained that the Court erred in instructing the jury that the assent of the Insurance Company of North America was not necessary to constitute this particular contract a binding contract as between the plaintiffs and this defendant; that it might have had some effect on the validity of the contract existing between plaintiffs and the Insurance Company of North America, but if this defendant was advised that the insurance with the Insurance Company of North America was in force, and the amount of it made known to the defendant Company, and the defendant Company with that knowledge issued the policy and delivered it, it would be bound, regardless of what effect the failure to procure the assent of the Insurance Company of North America might have on the contracts existing between these plaintiffs and the other insurance company. We have heretofore said in this opinion that this instruction was not erroneous. We are unable to understand how the consent of the Insurance Company of North America to the issuance and delivery of the policy sued on was necessary. The plaintiff in error, Insurance Company could certainly issue this policy without requiring the assent of the Insurance Company of North America. The requirement of such assent could only go to reserving the validity of the insurance carried by the Insurance Company of North America.

It is complained that the Court erred in not stating to the jury in his charge, after reciting the respective insistencies of the parties,

that such insistencies were to be looked to by the jury and to have weight or bearing on the issues joined, only in so far as they were supported by the evidence. No request embodying this proposition was submitted and therefore this assignment must be overruled, as mere meagerness of the charge is not ground for reversal where no request was submitted to cover the omission. However, a careful reading of the instructions given reveals the fact that the jury were instructed that they must look to the evidence for the determination of the issues. Of course as intelligent, reasonable men they must have known that this was true.

In the twelfth assignment it is complained that the Court erred in admitting testimony of Wilson Thompson and Mrs. Lucile Thompson as to conversations which they had with Mr. Seay a short time after the fire occurred. This testimony as to statements of Seay that plaintiffs had this insurance with his company, was admitted, and was admissible, for purpose of contradiction of him as a witness. His testimony as to the making of the application, the attempted cancellation, the retention of the premium, etc., was quite contradictory to that of the plaintiffs, Mr. and Mrs. Thompson.

The Court sustained the objection of plaintiffs' counsel to the admission of testimony of the witness C. S. Key, that about thirty days after the fire the plaintiff Wilson Thompson told him that "he didn't consider" that he had any insurance with the defendant company. The Court held that it was immaterial what the plaintiff thought his rights were, and he could not be contradicted in this way on an immaterial matter. We are of the opinion that the Circuit Judge was correct in excluding this testimony. It did not bear on the good faith of defendant company nor was it competent as tending to show that the plaintiff understood that the contract had been cancelled. Mr. Thompson was asked if he had told Mr. Key that he had no insurance with the defendant company. He answered that he told him that he did not know; that the policy had been in the custody of the agent, but had not been delivered to him. If, in any view, this testimony offered by Key was admissible, it bore so remotely upon the issues that the exclusion of it would not have been reversible error.

The insistence that plaintiffs cannot recover because they failed to furnish proofs of loss, in the manner and form and within the time, provided by the policy, cannot be sustained.

Mr. Thompson testified that within sixty days after the fire he complied with the requirements of the policy by making and sending to the defendant Company proofs of loss. Mrs. Glick, the officer of the Company, testified that "official notice" of the fire was received by the Company some time in December, 1927, which was within the said period of sixty days.

Mr. Thompson testified that demand for payment was made by him on the Company, payment was refused, and he was told that payment would only be made at the end of a lawsuit.

As to the penalty allowed, there is ample evidence to sustain it as to the amount—evidence that the plaintiffs have incurred that much of additional expenses, loss and injury entailed by the refusal of the defendant to pay. The statute (Shannon's Code, section 3369a141) makes the question of good or bad faith in refusing to pay, a question for the jury in such a case where there is any evidence of bad faith. The defendant Company must be judged by the acts of its agent. If it made a full investigation after demand was made, it found that the plaintiffs had been so treated and misled by its agents that they had a full right to believe, and did believe, that the policy was in force. There is material evidence that the agent acted in bad faith and that the defendant endeavored to take advantage of it. If it did not make the investigation thus set forth, it should have made it, and it is bound by, and must be treated according to, what such investigation would have revealed. The plaintiffs, therefore, are entitled to be reimbursed for their loss entailed, to the amount allowed by the statute, as represented in the judgment.

It results that all the assignments of error are overruled and the judgment of the Circuit Court is affirmed. Judgment will be entered in this Court in favor of the defendants in error against the plaintiff in error and the surety on its appeal bond for the sum of $1250, with interest from May 9, 1929, and all the costs of this cause.

Faw, P. J., and Crownover, J., concur.