## STANDARD OIL CO. OF NEW JERSEY v. UNIVERSAL INS. CO.

District Court, S. D. New York.
March 21, 1933.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, Charles R. Hickox, and Clement C. Rinehart, all of New York City, for libelant.

Single & Hill and Loring R. Lecraw, all of New York City, for respondent.

GODDARD, District Judge.

This is a motion by libelant for final decree on the pleadings herein and the stipulation of facts entered into between counsel for the respective parties.

On November 2, 1929, the Standard Oil Company of New Jersey shipped a cargo of fuel oil in bulk on the steamer Inverurie from Baytown, Tex., for English ports where the cargo was to be delivered to the British Mexican Petroleum Company, Limited. On November 12, 1929, the respondent, the Universal Insurance Company, Limited, issued a policy of marine insurance to the libelant, the Standard Oil Company of New Jersey, "as agents on account of whom it may concern" covering the Inverurie's cargo which was valued in the policy at $41,800. When the Inverurie was nearing Liverpool, the steamer Palacio collided with her and as a result of the collision the Inverurie lost 2,131.73834 tons of cargo of which the insured value was $10,476.43. After the collision, certain extraordinary expenses were incurred in connection with saving the Inverurie and her cargo which constituted a general average expense against the vessel and her cargo. There were also expenses for salving leaking oil, surveys, etc. In consequence of the loss of cargo and the general average and other expenses, the libelant, as agent for the British Mexican Petroleum Company, Limited, became entitled to recover from the respondent the sum of $12,583.41 under the insurance policy. Subsequent to the collision the owners of the Palacio instituted limitation of liability proceedings in England and the Palacio was found to be solely at fault for the collision. However, the fund paid into court by the owners of the Palacio in those proceedings was sufficient to pay but 44.756 per cent. of the claims proved and allowed against the Palacio including the claim for loss of cargo on the Inverurie. The claim for the loss of cargo filed by the British Mexican Petroleum Company, Limited, and allowed in the limitation proceedings fixed the actual value of the 2,131.73834 tons of cargo lost in the collision at $23,738.69 and the amount received by the British Mexican Petroleum Company, Limited, from the limitation fund on account of lost cargo was $10,624.39.

The contention of the libelant is that the recovery of $10,624.39 should be apportioned between the libelant as assured and the underwriter in the ratio that the insured value of the lost cargo bore to its actual value as established in the limitation proceedings, and the respondent contends that all of this $10,-624.39 up to $10,476.43 insured value should be credited to the respondent against its liability under its policy. It is conceded by both parties that a decree should be entered in favor of the libelant and that if the court finds that the libelant's contention is correct, it is entitled to a decree of $7,095.59, and that if the court finds that the respondent's contention is right then the libelant is entitled to a decree of $1,361.46. These figures also take into consideration credits which respondent concededly is entitled to for sums recovered from Palacio by libelant on account of expenses incurred by libelant in reconditioning and salving oil, survey fees, etc.

It seems to me that the British Mexican Petroleum Company, Limited, is to be regarded as a coinsurer to the extent of the excess of the actual value over the insured value stated in respondent's policy and consequently that the amount obtained in the limitation proceedings from the Palacio should be apportioned between the libelant and the respondent insurance company in the ratio that the insured value of the lost cargo bore to its

actual value as established in the limitation proceedings.

The principles to be applied to the case at bar are determined by the Supreme Court in its recent decision in Gulf Refining Company v. Atlantic Mutual Insurance Company, 279 U. S. 708, 49 S. Ct. 439, 73 L. Ed. 914, where a cargo of gasoline which was shipped on the tanker Gulflight had been insured against war risks under policies which valued her cargo at $212,000. The Atlantic Mutual Insurance Company, one of the underwriters, issued a policy for about 13 per cent. of the risk at the insured valuation. During the voyage, the Gulflight was damaged by a torpedo in consequence of which damages and expenses of $49,088.04 was assessed against the cargo on the basis of the actual value of her cargo at destination, which value was found to be $417,000. The insured claimed from the Atlantic Mutual Insurance Company 13 per cent. of the full contribution due from the cargo in general average. The underwriters contended that the cargo owner was a coinsurer of the cargo with the underwriters and that the amount of the cargo owner's interest was the excess of the actual value over the insured value, and therefore that the underwriters were liable only for that portion of the total general average which the insured value bore to the sound value. The underwriters' contention was upheld by the Supreme Court, and Mr. Justice Stone said:

"The sole question presented here is whether, in adjusting a general average loss upon cargo insurance under a valued policy, the insured is coinsurer to the extent that the sound value of the cargo at the time of contribution exceeds its agreed value, or, stated in somewhat different form, whether the effect of a valued policy on cargo, in limiting the liability of the insurer, is the same in a case of a general average as of a particular average loss. It has long been the accepted rule that in the case of a partial loss of cargo insured under a valued policy * * * the insured, in case of increase or decrease in its value, recovers that proportion of his loss which the agreed value * * * bears to the sound value. In case of an increase in value, his recovery is thus limited as though he were a coinsurer. [Cases cited.] * * * The coinsurance principle, long and consistently applied in the case of particular average losses under both open and valued policies, gives a reasonable and equitable effect to the stipulation fixing value, consonant with principles generally applicable to marine insurance. It may be applied to general average contributions with like effect and with added consistency and harmony in the law. * * * In every particular average adjustment the insurer may rely on the sound value of the cargo in order to establish the extent to which the insured is a coinsurer. It is true that a general average contribution is always determined and stated in terms of money and so the insured may establish his loss merely by proof of its amount, but his contribution is itself based upon sound value which entered into its computation, and its amount for all practical purposes, as in the case of particular average is increased in proportion to the excess of sound value over agreed value, see S. S. Balmoral Co. v. Marten (1902) App. Cas. 511, 514, 515. We perceive no reason why his recovery may not likewise be reduced accordingly."

That the Gulf Refining Company v. Atlantic Mutual Insurance Company was a case involving general average does not make it any the less applicable to the case at bar (one of particular average) for as Mr. Justice Stone in his opinion states a similar rule had always existed in partial loss of cargo. The situation in Gulf Refining Company v. Atlantic Mutual Insurance Company is the converse of that presented in the case at bar. In Gulf Refining Company v. Atlantic Mutual Insurance Company the underwriter invoked the principle of coinsurance to reduce a claim under the policy and to compel the insured to bear such proportion of the general average loss as the excess of the actual value of the goods over the value in the policy bore to the actual value of the risk. While in the case at bar, the insured invokes the same principle of coinsurance so that it may share in a recovery in the same proportion as the insured was required to share in the loss in the Gulf Refining Company v. Atlantic Mutual Insurance Company. In Gulf Refining Company v. Atlantic Mutual Insurance Company the general average contribution was based on the actual value of the cargo which was about twice the insured value.

It also appears that the respondent itself invoked the benefit of the coinsurance rule established in Gulf Refining Company v. Atlantic Mutual Insurance Company to reduce its liability for the general average contribution that became due on the portion of the Inverurie's cargo discharged at Liverpool. At that time libelant's principal paid a total contribution equivalent to $454.17 with respect to the cargo saved and this contribution was based on a higher actual value of the cargo than the insured value with the result that

the respondent is paying on account of general average only $207.10 which is its share determined by the ratio of the insured value of cargo saved to the actual value arrived at in assessing the contribution. So that libelant's principal has borne the difference between $454.17 and $207.10 or $247.07 for the reason that libelant's principal was coinsurer with the respondent.

Respondent has cited several cases in support of its contention including North of England v. Armstrong, 5 Q. B. 244; Thames & Mersey Marine Insurance Company v. British & Chilian S. S. Co., 2 K. B. 214, and some others. However, these cases deal with losses on hull policies and a different rule exists between cargo and hull losses.

The rule and the reasons therefor are found in International Navigation Co. v. Atlantic Mutual Insurance Co. (D. C.) 100 F. 304, affirmed (C. C. A.) 108 F. 987; also Gulf Refining Company v. Atlantic Mutual Insurance Company, supra.

For the reasons above mentioned, the libelant is entitled to a decree for $7,095.59 with costs. However, as it appears that an offer of compromise made on December 23, 1930, by respondent of $1,213.50 was held under advisement by libelant until May, 1931, interest will not be allowed on this $1,213.50 for the period between December 23, 1930, and May 1, 1931.