# PALATINE INSURANCE COMPANY, Limited, v. E. K. HARDISON SEED COMPANY.—303 S. W. (2d) 742.

Middle Section.    March 29, 1957.

Petition for Certiorari denied by Supreme Court June 7, 1957.

390

Marshall & Blackmon, Richard Marshall and D. F. Blackmon, Nashville, for plaintiff in error.

Waller, Davis & Lansden, Nashville, for defendant in error.

SHRIVER, J. The parties will be referred to as plaintiff and defendant as they appeared in the Court below.

I

This action was brought to recover the face amount of an insurance policy, plus interest and statutory penalty, for loss by theft, of a 1948 Chevrolet two ton truck.

The case was tried in the First Circuit Court, before Hon. Richard P. Dews and a jury, where there was a verdict in favor of plaintiff for $1,100 proceeds of the policy, plus 6% interest from the date of the loss and $275 penalty, or a total verdict and judgment of $1,430.

A motion for a new trial was heard and overruled, except for the eighth ground thereof, in which ground it was sought to have the verdict set aside as to the penalty. The trial Judge sustained this ground of the motion so as to direct a verdict in favor of the defendant as to the penalty.

The motion was denied in all other respects and the judgment was modified so as to award plaintiff a recovery of $1,172.22, being $1,100 proceeds of the policy, plus 6% interest from the date of the loss.

The plaintiff excepted to the Court's action in setting aside the verdict as to the penalty, and appealed.

It is plaintiff's contention that there was ample evidence that defendant did not act in good faith in refusing to make the required payment under its policy and that the question of good faith was properly submitted to the

jury, and that said judgment for the penalty should have stood.

The defendant, Insurance Company, perfected its appeal in error and has made numerous assignments.

## II

In dealing with the defendant Insurance Company's assignments perhaps the determinative question is whether the policy (exhibit No. 1 to McCoy) is a "valued policy" insuring the stolen truck for the stated amount of $1,100, as contended by plaintiff, or is an "open policy" providing coverage for the actual cash value of the truck, not to exceed $1,100.

The policy provides for an appraisal where the amount of loss is in dispute, and it is the insistence of the defendant that this suit can not be maintained because the company demanded an appraisal and, under the terms of the policy, no suit can be maintained unless and until this condition of the policy is met.

On the other hand, plaintiff insists that the policy, being a "valued policy", and not an "open policy", the coverage was for the exact amount of $1,100 and, therefore, no arbitration as to the amount of loss is necessary or proper, there being no dispute as to the fact of total loss of the truck by theft.

Furthermore, it is insisted by the plaintiff that the defendant had no right to demand an appraisal because it refused to receive plaintiff's proof of loss and, under the policy provisions, an appraisal can be demanded only within sixty days after the receipt of proof of loss. Moreover, it is claimed that the defendant waived any

right that it might have had to demand an appraisal when it rejected plaintiff's proof of loss without objecting to the amount of the loss.

## III

### The Facts

It is not disputed in the record that the policy was in effect at the time of the loss and provided theft insurance on the stolen vehicle. Said truck was stolen on August 19, 1955, and the loss was reported to defendant on August 20, 1955.

On the face of the policy, under ''Coverages'', the following is set out;

''A. Comprehensive—Loss of or damage to the Automobile, except by Collision or Upset but including Fire, Theft and Windstorm.

Items 1, 4, 6 and 7 Act. cash val. See endorsement

''Comprehensive on Items 2, 3, and 5 (Stated amount) See endorsement.''

Without copying the entire endorsement herein, item ''1'', for example, is;

''1948 Chevrolet TR 4 dr. Spt. Sedan, M#FAM-178412 ''G'' ACV Comprehensive, premium $6.00''

Item ''3'' is the one that covers the truck in question here. It is as follows;

''3. 1948 Chevrolet 2 ton Truck, M#FEA-554045, cost $2884.50, amount of insurance $1100; fire rate .90; theft rate .15; comprehensive, .30; bought new Sept. '48; premium 14.85.''

It is to be observed that in the Endorsement, which is an especial typewritten page, attached to the printed policy form, no amount of insurance is set out for the four automobiles that were insured for actual cash value as Items 1, 4, 6 and 7. Item 3 shows that the premium on this 1948 Chevrolet 2 ton truck was $14.85, which was arrived at by multiplying the rates shown therein by $1,100, the face amount of the insurance on same.

It is to be further noted that the premium on item No. 1, a 1948 4 door sport sedan automobile, which was insured for actual cash value, was only $6 while that on the truck was $14.85.

It is shown in the policy that the defendant had the option of replacing the stolen truck with a similar truck, however, defendant did not offer to replace it and refused to pay the $1,100, insisting that the loss of the truck rendered it liable only for the actual cash value thereof.

The record shows that the loss was reported on August 20, 1955 and proof of loss form requested about a week later, yet the defendant did not furnish a proof of loss form until about ninety days after the loss.

The proof of loss was rejected for several reasons which it will not be necessary to discuss at this point.

It is shown that the policy was written by defendant's Nashville agent, Mr. W. O. Treanor. In the negotiations about the issuance of the policy, the amount of insurance to be carried on the trucks, including the truck in question, was discussed. Mr. Treanor suggested $1,100 as being the proper amount to carry on the truck.

It is shown in the proof that this same truck had been insured by the defendant, through its agent Mr. Treanor, for several years prior to the year in question. The first year it had been insured for $2,800 and the amount of insurance was reduced each year. The previous year the truck had been insured for $1,500.

Several months after the loss, plaintiff's secretary wrote the defendant demanding the payment of the $1,100. And asked for a proof of loss form, since no such form had been forthcoming and no action on the loss had been taken, although defendant had been promptly notified about it.

After the proof of loss form was prepared claiming $1,100, plaintiff's secretary, after some weeks had elapsed, wired the defendant requesting that defendant advise plaintiff of its final decision as to the loss. In reply thereto the defendant's representative wrote demanding an appraisal of the loss. A second letter from defendant, written on the same day, stated that defendant could not accept plaintiff's proof of loss for the following reasons, ''(1) It did not have attached a description and amount of other insurance; (2) It did not identify the particular policy; (3) It did not show the agent who issued the policy; and (4) It did not show the agent's address.''

Mr. Dungan, who wrote these letters, testified as a witness for the defendant and stated that the defendant sent him the proof of loss with instructions to reject it, but did not tell him the reasons therefor. Mr. Dungan admitted that the policy did not require that the proof of loss contain the policy number or the name and address of the agent issuing the policy. He also admitted that

he knew the name and address of the agent and the policy number when he sent the letter rejecting the proof of loss.

It was shown that there was no other insurance on the truck hence the proof of loss did not show any other insurance.

After the receipt of the above mentioned letters of December 13, 1955 plaintiff, on advice of the counsel, brought this action.

## IV

■ An examination of the insurance policy involved here shows that a 1948 Chevrolet 2 ton truck which, admittedly, was stolen and, therefore, resulted in a total loss, was insured for $1,100 as a fixed value.

The rate specified therein and the premium designated for said coverage, show that the premium was arrived at by multiplying the rates by the $1,100 value, thus making a premium of $14.85 for said coverage.

It is perfectly apparent that the coverage on the several automobiles listed in the "Automobile Endorsement" was for the actual cash value of said automobiles at the time of loss, whereas, on the truck in question, it was for the fixed amount of $1,100.

This is made more evident by proof in the record showing the purpose and intent of the parties to the transaction at the time the policy was written, and their interpretation of the coverage at the time, plus the fact that this same truck was insured by the same company, through the same agent, for several years previously and, at the end of each year, the amount of the insurance was

substaintially reduced to take care of depreciation in value of said truck.

■ Of two plausible constructions of an insurance contract, that construction will be adopted which is most favorable to the insured, see Globe & Rutgers Fire Ins. Co. v. House, 163 Tenn. 585, 45 S. W. (2d) 55; Life & Cas. Ins. Co. v. Cantrell, 166 Tenn. 22, 57 S. W. (2d) 792; Woods v. City of La Follette, 185 Tenn. 655, 207 S. W. (2d) 572; Universal Life Ins. Co. v. Lillard, 190 Tenn. 111, 228 S. W. (2d) 79 and cases therein cited with approval.

As was said in Universal Life Ins. Co. Co. v. Lillard, 190 Tenn. 111, 228 S. W. (2d) 79;

"A provision in policy limiting liability of insurer is construed strongly against insurer."

In American Insurance Co. v. Gentile Bros. Co., 5 Cir., 109 F. (2d) 732, 735, it was said;

"In a valued policy the value of the subject matter is agreed upon before hand. If there is anything in the policy which clearly indicates an intention on the part of the insurer to value the risk and loss, in whatever words expressed, the policy is valued."

In Hoffman v. Insurance Companies, 88 Tenn. 735, 736, 14 S. W. 72, it was held that a specific amount listed in an insurance policy opposite an item was to be construed as being the amount for which that item was insured.

In 29 Am. Jur. at p. 917, it is said;

"A valued policy is one where the value of the subject matter insured is agreed upon; if it is not estimated at any particular amount or rate, it is an open

policy. The 'sum at risk', under such a policy, is the valuation placed upon the property by the policy itself.''

Among the cases in support of the above statement is that of Gulf Refining Co. v. Atlantic Mut. Ins. Co., 279 U. S. 708, 49 S. Ct. 439, 440, 73 L. Ed. 914, in which case it was held that;

An agreement in a marine insurance policy ''valuing the cargo'' insured thereby at a specified amount ''is not a representation'' but merely ''a stipulation in effect, that, for purposes of computation of the insurance liability the cargo shall be taken at an agreed value.''

Again it is said in the text, ''In case of a total loss, the value is conclusive upon the parties, unless it is fraudulent or so grossly excessive as to indicate fraud.'' 29 Am. Jur. sec. 1222, p. 917.

We are of opinion that the policy in question here is a ''valued policy'' as to the truck in question. This being true, there was no ground for dispute as to the value of the said truck, since the amount was fixed at $1,100 by the policy itself. It thus follows that there was no reasonable ground for the exercise of the right to an appraisal as insisted upon by the defendant.

In 19 Am. Jur. sec. 1241, p. 927, it is said;

''If a policy provides that if the insurer and insured differ in estimating the amount of the loss, appraisers shall be appointed to fix the amount, there must be a real difference between the parties before a demand for appraisers can be made. The fact that the insurer merely declines to pay the amount of loss

fixed by an itemized account made by the insured is not such real difference between them." Citing numerous cases from several jurisdictions.

Among the cases cited in support of the above statement (29 Am. Jur. sec. 1241) is Hickerson v. German-American Ins. Co. 96 Tenn. 193, 33 S. W. 1041, 32 L. R. A. 172, where it was held;

Syl. 1. "Fire Insurance. Arbitration clause operative only where real differences are developed.

"The existence of a real difference between insurer and insured, arising out of an honest effort to agree, is necessary to make operative the condition in a fire policy that loss shall not be payable, or suit therefor maintainable, until the amount shall have been settled by arbitration."

Syl. 2. "Same. General objection to proofs of loss insufficient.

"A general objection to proofs of loss, which fails to point out in detail the specific items excepted to, and the grounds of exception, does not constitute such a failure to agree as renders the arbitration clause of an insurance policy operative to suspend payment of loss or suit for same."

Syl. 4. "Same. Arbitration clause waived, when. An insurer waives the arbitration clause by denying all liability, even when the policy expressly stipulates that the appraisal shall bind him only as to amount of loss, and not as to liability therefor."

It is shown by the record that the defendant rejected plaintiff's proof of loss, and it is seen that, under the

provisions of the policy, an appraisal could not be demanded except within sixty days after the defendant had received proof of loss, but it is further to be observed that the defendant, in refusing to accept the plaintiff's proof of loss, did so without objecting to the amount of the loss shown therein.

■ One of the reasons assigned by the defendant for rejecting the proof of loss was that it did not contain a description of other insurance. However, the record shows that there was no other insurance.

■ The other reasons assigned by the defendant for rejecting it were that the proof did not contain the policy number and did not give the name and address of the agent who issued the policy. We are of opinion that these were insufficient reasons because the defendant knew the policy number and the address of the agent and it was so shown by the proof. Furthermore, there was no requirement in the policy that these matters be set out in the proof of loss. As stated hereinabove, there was no dispute about the fact that the stolen truck was a total loss.

In Hickerson v. German-American Ins. Co., supra, the existence of a real difference between the insurer and the insured as to the amount of loss was held to be a condition precedent to the right to demand an appraisal.

In Harowitz v. Concordia Fire Ins. Co., 129 Tenn. 691, at pp. 694-695, 168 S. W. 163, at p. 164; in discussing the right to demand an appraisal, the Court said,

"A mere general objection to the proofs, without pointing out in detail the items excepted to, will not be sufficient; but the objection must be so specific,

with detail of items, as to enable the assured to see upon what points differences exist, and a counter statement, if necessary, should be furnished, showing the contention of the companies in such way that the difference, if practicable, may be adjusted and settled. If this should fail after an honest effort is made, an appraisal may be demanded by either party, and only in such event.''

From all the above, we conclude that there was no valid ground upon which the insurance company had the right to demand an appraisal as to the amount of loss, therefore, all assignments of error having to do with the alleged prematurity of suit because plaintiff did not submit to an appraisal, are overruled.

## V

■ The foregoing disposes of most of defendant's assignments of error. However, it is also asserted in the assignments that it was error for the trial Court to submit to the jury the question whether or not the policy provided coverage for the actual cash value of the stolen vehicle or was a "valued policy", since it is said that this was a question of law to be decided by the Court.

If the submission of this question to the jury was error, it was harmless in view of the fact that the trial Judge and this Court concur in the result.

■ It is further asserted in the assignments that the trial Court erred in admitting evidence upon behalf of plaintiff relative to any agreement about the valuation of the vehicle at the time the policy was issued.

We hold that the admission of such evidence was not error inasmuch as it simply tended to explain the interpretation that the parties put upon the language written into the policy by way of endorsement and the purpose of its inclusion therein.

■ Error is assigned with respect to the admission of testimony on behalf of plaintiff as to the value of the stolen automobile. It appears that the defendant first introduced evidence as to the value of the vehicle over the objections of the plaintiff. The trial Judge did not commit error in allowing plaintiff, in rebuttal, to offer evidence in this regard, although plaintiff maintained that such evidence was not necessary to a decision of the case.

Errors were assigned upon the ground that the trial Judge refused certain special requests on behalf of the defendant.

An examination of said special requests reveals that the trial Judge was fully justified in denying same.

One such special request sought to have the Judge charge the jury that in the event they found that the plaintiff refused to proceed to appoint an appraiser and arbitrate the loss, that it would be the duty of the jury to find for the defendant.

Another such request asked the trial Judge to charge that the policy in question was an ''open policy'' and not a ''valued'' one.

■ Error is assigned to the action of the trial Judge in sustaining the plaintiff's motion to dismiss the defendant's cross-action whereby it was sought to recover a penalty under sec. 56-1106, T. C. A., on the ground that

the plaintiff had been guilty of bad faith in refusing to submit to an appraisal.

We concur in the action of the trial Judge in the dismissal of said cross-action.

On the whole, we are satisfied that there was ample evidence to support the jury verdict, and that the assignments of error on behalf of defendant should all be overruled.

## VI

Plaintiff assigned error as follows;

"The Court erred in sustaining the eighth ground of defendant's motion for a new trial, and in setting aside the recovery of $275 penalty awarded plaintiff by the jury verdict. This was error because there was substantial material evidence to support the verdict of the jury that defendant refused to pay the proceeds of the insurance policy issued by it within sixty days after demand had been made and that said refusal to pay was not in good faith."

An examination of this record convinces us that there was substantial evidence upon which the jury could have found, as it did, that the defendant insurance company did not act in good faith and that this caused plaintiff to incur additional expenses, thus rendering defendant liable for the statutory penalty.

Sec. 56-1105, T. C. A., is as follows;

"The insurance companies of this state, and foreign insurance companies and other persons doing an insurance business in this state, in all cases when

a loss occurs and they refuse to pay the same within sixty (60) days after a demand shall have been made by the holder of the policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition ot the loss and interest thereon, a sum not exceeding twenty-five per cent (25%) on the liability for said loss: *provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay said loss was not in good faith,* and that such failure to pay inflicted additional expense, loss, or injury upon the holder of said policy; and, provided, further, that such additional liability, within the limit prescribed, shall, *in the discretion of the court or jury trying the case,* be measured by the additional expense, loss, and injury thus entailed." (Italics ours.)

In Tennessee Farmers Mut. Fire Ins. Co. v. Thompson, 12 Tenn. App. 591, and in Frederick for Use and Benefit of Polk v. New England Fire Ins. Co., 36 Tenn. App. 587, 259 S. W. (2d) 879, it was held that the question of good faith or bad faith upon the insurer in refusing payment under an insurance policy is a question of fact for the jury.

In Tennessee Farmers Mutual Fire Ins. Co. v. Thompson, supra, it was said;

"As to the penalty allowed, there is ample evidence to sustain it as to the amount—evidence that the plaintiffs have incurred that much of additional expenses, loss and injury entailed by the refusal of the defendant to pay. The statute (Shannon's Code, sec. 3369a 141) makes the question of good or bad faith in refusing to pay, a question for the jury in

such a case where there is any evidence of bad faith. The defendant Company must be judged by the acts of its agent.''

Evidence of additional expense to the insured was introduced and the course of conduct of defendant, along with all the other facts and circumstances, was submitted to the jury under a proper charge of the Court, resulting in a verdict for $1,100 and interest, plus $275 as penalty.

Under the foregoing statute and decisions, we are of opinion that the question as to said penalty was properly submitted to the jury and, inasmuch as the statute makes it discretionary with the Court or jury trying a case, we must hold that, in the event of a trial without a jury the discretion is in the Court and will not be disturbed on appeal except for plain abuse, thereof, but, in the event of a jury trial, the issue of good faith is a jury question and the discretion is vested by statute in the jury. Where there is substantial evidence to support the verdict, such discretion is not properly interfered with by the trial Judge except in the exercise of his right to set the verdict aside and grant a new trial if he is dissatisfied with it, but his discretion does not extend, as it was exercised in this case, to the right to direct the jury to find for the defendant where there is substantial, material evidence to support a verdict on an issue of fact.

Sec. 27-118, T. C. A. contains the following provision;

''* * * If, in the opinion of said Court of Appeals, the verdict of the jury should not have been reduced, but that the judgment of the trial court is correct in other respects, the case shall be reversed to that extent, and judgment shall be rendered in the Court

of Appeals for the full amount originally awarded by the jury in the trial court.''

■ While the foregoing statute deals generally with the remittitur, we think that, in a situation such as the one we are dealing with here, it should be considered in pari materia with the penalty statute, supra, and other related laws and decisions, so that, instead of being under the necessity of remanding the case for a new trial, as we might do, we may restore the penalty found by the jury.

It results that plaintiff's assignment of error is sustained and the $275 penalty is restored.

As thus modified, the judgment of the trial Court is affirmed.

Modified and affirmed.

Felts and Hickerson, JJ., concur.