**DELTA SUPPLY CO.,** Plaintiff,

v.

**LIBERTY MUTUAL INSURANCE CO.**
and Seabrook Shipyard, Inc.,
Defendants.

Civ. A. No. 12273.

United States District Court
S. D. Texas,
Houston Division.

Nov. 16, 1962.

Davis, Phelps, Liles, Norton & Gray, Jim S. Phelps and Will Gray, Houston, Tex., for plaintiff.

Baker, Botts, Andrews & Shepherd, Frank G. Harmon, Houston, Tex., for defendant Liberty Mut. Ins. Co.

Hutcheson, Taliaferro & Hutcheson, Walter P. Zivley, Eastham, Watson, Dale & Forney, John P. Forney, Houston, Tex., for defendant Seabrook Shipyard, Inc.

NOEL, District Judge.

Plaintiff was the owner of the yacht "Renay" which sank on the morning of July 7, 1958 while berthed in its regular place at the docks of defendant Seabrook Shipyard, Inc. Prior to the sinking of the "Renay," plaintiff had purchased from the defendant Liberty Mutual Insurance Company a policy of insurance, which was in effect at the time of said sinking. It insured the vessel

for $15,000.00. The "Renay" was raised and thereafter plaintiff sold it, receiving therefor as salvage the sum of $4,500.00.

Plaintiff alleged that the sinking was caused by the negligence of the defendant Seabrook Shipyard, Inc. Plaintiff further alleged that the sinking was under such conditions that the damages resulting from the sinking were covered under the terms of the insurance policy issued by defendant Liberty Mutual Insurance Company.

The jury, in answering special issues, found in essence that defendant Seabrook Shipyard was not responsible for the sinking of the yacht and also found that the sinking was under such conditions that the damages resulting therefrom were covered under the terms of the insurance policy. In response to other special issues, the jury found that the reasonable cash market value of the yacht immediately prior to her sinking was $18,000.00, even though the yacht was valued in the insurance policy for only $15,000.00. The jury further found that the reasonable cash market value of the yacht in its damaged condition immediately after it had been raised and placed on the ways of Seabrook Shipyard, Inc. was $4,500.00 and that the cost of repairs reasonably necessary to restore the yacht to her condition immediately prior to the sinking was $12,700.00.

The sole question remaining in this case for the Court to decide is the computation of the amount of recovery to which plaintiff is entitled as against Liberty Mutual Insurance Company; i. e., what is the measure of damages where a vessel, after sustaining a partial loss, is sold by the owner unrepaired.

The defendant insurance company contends that the "Renay" should be treated as a "constructive total loss," with the result that the defendant would be entitled to a credit of $4,500.00 for the amount recovered by plaintiff by virtue of the sale of the yacht in her damaged condition, thus reducing the company's liability from $15,000.00 (the maximum) to $10,500.00.

The English rule on "constructive total loss" provides in essence that a "constructive total loss" occurs when, although a vessel continues to exist in specie, the cost of repairs of the vessel exceeds the insured value. Marine Insurance Act, 6 Edw. 7, C. 41, Sec. 60; Arnould, Marine Insurance, Sec. 1091 (14 ed. 1954). The American rule, however, provides that in the absence of any policy provision either defining "constructive total loss" or specifying that the English rule should prevail, there is a "constructive total loss" when the cost of repairs exceeds one-half the insured value of the vessel. Marcardier v. Chesapeake Ins. Co., 8 Cranch 39, 12 U.S. 39, 3 L.Ed. 48 (1814); Jeffcott v. Aetna Ins. Co., 129 F.2d 582 (2d Cir., 1942), cert. den. 317 U.S. 663, 63 S.Ct. 64, 87 L.Ed. 533.

Here, the insurance policy contained the following clause:

"No recovery for a 'constructive total loss' shall be had hereunder unless the expense of recovering and repairing the vessel shall exceed the insured value of the vessel."

This clause invoked the above-stated English rule for determining whether or not there was a "constructive total loss." The insured value in this case was $15,000.00; the cost of repairs, as found by the jury, was $12,700.00. Since the cost of repairs did not exceed the insured value of the vessel, there was no "constructive total loss" under the policy.

Plaintiff asserts that it is entitled to recover the estimated cost of repairs, just as if such had been made, which cost of repairs was determined by the jury to be $12,700.00, and also the cost of a repair survey made by J. R. Bencal in the amount of $198.00, totalling $12,898.00.

There is no doubt that if plaintiff had actually repaired the yacht, instead of selling it in an unrepaired condition, plaintiff would have been entitled to the actual cost of such repairs. International Nav. Co. v. Atlantic Mutual Ins. Co.,

100 F. 304 (S.D.N.Y., 1900); Sec. 2–16 Gilmore and Black 85 (1957). But in this case the yacht was sold unrepaired, from which fact in my opinion it follows that plaintiff is not entitled to the estimated cost of repairs.

The controlling case in the area of the amount of damages that a plaintiff may receive when it sells its vessel unrepaired is Pitman v. Universal Marine Ins. Co., 9 Q.B.D. 192 (1882). The persuasiveness of this case as authority is not diminished by the fact that it is an English case, for our federal courts look to the laws of England for guidance in matters of marine insurance and follow them unless, as a matter of policy, a different rule has been adopted. Queen Ins. Co. v. Globe & Rutgers Fire Ins. Co., 263 U.S. 487, 44 S.Ct. 175, 68 L.Ed. 402 (1923); Aetna Ins. Co. v. Houston Oil & Transp. Co., 49 F.2d 121 (5th Cir., 1931).

The Pitman case is exactly in point; it involved a vessel that suffered a partial loss and that was sold unrepaired. The plaintiff in that case contended that he was entitled to the estimated cost of repairs. The Court, however, declared that such damages were not proper and laid down its own formula. The Court emphasized the importance of the fact that the vessel had been sold unrepaired. The Court held that the measure of damages against an insurer where a vessel is sold unrepaired is the depreciation in the value of the ship as a result of the injury.

After extensive research, I have been unable to find any United States authority on the exact question involved in the present case. However, several cases in dicta have assumed that the rule of the Pitman case is the correct one to apply in determining damages in a situation where a vessel is sold unrepaired.

For example, the Court in Aetna Ins. Co. v. United Fruit Co., 92 F.2d 576, 578 (2d Cir., 1937), stated:

"It is true that the rule has become settled in cases of 'valued' hull policies that the underwriter pays partial losses in full, and it is also true that consistently with the principles of other insurance he ought not to be so charged. However, the reason is not that the agreed value is taken as an estoppel, but that partial losses in the cases of hulls commonly result in repairs, the injured hull not being appraised like cargo. Gulf Refining Co. v. Atlantic Mutual Ins. Co., 279 U.S. 708, 713, 49 S.Ct. 439, 73 L.Ed. 914. That this is the real explanation is confirmed by the fact that the rule is not applied even in hull cases where the claim does not result from repairs. Pitman v. Universal Marine Co., L.R. 9 Q.B.D. 192 * * *."

See also, Gulf Refining Co. v. Atlantic Mutual Ins. Co., 279 U.S. 708, 713, 49 S.Ct. 439, 440, 73 L.Ed. 914 (1929), wherein the United States Supreme Court stated:

"The rule that the insured may recover in full for partial losses under hull insurance * * * does not, we think, militate against the co-insurance * * *. We need not determine whether the rule as to hull insurance may be regarded as that of this Court or of others, or pass upon its merits. The distinction between insurance on cargo and that on hulls is an old one and a different result in the case of the latter may for that reason be accepted without affecting the rule as to the former. Where the distinction has been regarded as established, the departure from the rule applied in case of particular average losses of cargo has been justified on the ground that damage to a hull is not customarily ascertained by its sale, as is the case with cargo. The usual practice in cases of partial loss is for the insured to make repairs. His repair bill represents a sum of money which is the amount of his damage, ascertained without regard to the ship's value, and so the rule has been adopted as more convenient in practice than one re-

quiring determination of the sound value of the ship. * * * Some point is given to this explanation by the ruling in Pitman v. Universal Marine Insurance Co., L.R. 9 Q.B.D. 192, that the same rule should be applied as in particular average loss of cargoes, where the repairs were not in fact made and the loss was established by a sale of the ship."

The Pitman case was also discussed in International Nav. Co. v. Atlantic Mut. Ins. Co., 100 F. 304 (S.D.N.Y.,1900), a case wherein the cost of repairs was held to be the proper measure of damages when the vessel is actually repaired. The Pitman case was distinguished partly on the ground that in the Pitman case, the vessel, instead of being repaired, had been sold.

I feel that there is no inconsistency but, on the other hand, good reason for applying one rule as to damages in the situations where a vessel is repaired and not sold but yet another rule in situations where a vessel is sold unrepaired. An insurer should be required to indemnify an insured for actual loss, but only for his actual loss sustained within the terms of the insurance policy. In a situation where a vessel is not sold but is repaired to make it as good as before, the actual loss would be the cost of repairs. A different situation is presented when a vessel is sold unrepaired, and it requires the application of a different rule as to damages.

The Court in the Pitman case recognized the need for this difference in treatment in the following language:

"The first thing which strikes the mind * * * is that, apparently at least, if not really, the plaintiffs are contending for a right to be indemnified against a loss which they have not in fact sustained. The repairs, the cost of which the plaintiffs seek to make the measure of their loss, were not in fact made * * *. The * * * assumption, viz., that, as the plaintiff had the

right to repair the ship and to recover the cost from the underwriters, it is immaterial to them whether the right is exercised or not, is in my opinion entirely erroneous and opposed to the true principles of contracts of indemnity. Against what do the underwriters agree to indemnify the assured? Surely against such loss as he may in fact sustain by reason of the perils insured against * * *. [E]vents which have happened, and not those which might have happened, are to be regarded. Apart from all authority, I should have thought it plain that a loss actually sustained under circumstances which did happen is to be preferred as a measure of indemnity to a loss which would have been sustained under circumstances which did not happen."

I therefore feel that the damage formula of the Pitman case, rather than the normal damage rule of the cost of repairs, should be applied in situations where a vessel is sold unrepaired.

Applying the Pitman formula, the damages in the instant case would be computed as follows:

"From the actual value (referred to in Pitman as the sound value) of the yacht, $18,000.00, as found by the jury (not the stated value in the policy), should be subtracted the price for which it was sold less the Bencal survey cost; i. e., $18,000.00 less $4,302.00 ($4,500.00 less $198.00). The remainder, $13,698.00, is the depreciation in value of the vessel as a result of the loss. The proportion of depreciation to the actual value of the vessel is then determined; i. e., 13,698/18,000 or 761/1000. This proportion is applied to the agreed value of the vessel set forth in the policy, $15,000.00; i. e., 761/1000 x $15,000.00. Thus, $11,415.00 is the amount of damages plaintiff is entitled to recover under the Pitman formula."

The final contention of the plaintiff is that it is entitled to interest on the amount of damages from the time of the loss. Plaintiff's recovery of interest is entirely discretionary with the Court. Compania Maritime Astra v. Archdale, Sup., 134 N.Y.S.2d 20, 1954 A.M.C. 1674. It is, however, the practice of Admiralty Courts to allow interest on the loss from the date of such loss. McCunn v. The London & St. Katharine Docks Co., 6 Mar.Law.Cas.N.S. 225; Smith v. Kirby, 1 Q.B.D. 131. I feel that there are no circumstances present in this case which require this Court to depart from the normal practice; therefore, I find that interest at six per cent (6%) per annum on the amount of damages, $11,415.00, should be awarded from the date of the loss, July 7, 1958, to the date of the judgment in the case, and judgment will be entered accordingly.